# CHARLESTON.

## RINGOLD *v.* SUITER.

Submitted January 17, 1891.—Decided March 24, 1891.

(LUCAS, PRESIDENT, absent.)

1. GARNISHMENT.

   The remedy by garnishment is a creature of the statute, and limited by it.

2. GARNISHMENT—VERDICT.

   A finding by a jury as to indebtedness of a garnishee to the attachment debtor and effects in his hands, rendered upon a suggestion of the insufficiency of the garnishee's answer, must be sufficiently definite and certain to warrant judgment against the garnishee. The finding here is too vague.

3. EVIDENCE.

   Evidence certified can not be read to find facts essential to judgment, which should have been, but were not, found by verdict.

4. PARTNERS AND PARTNERSHIP—MARRIED WOMAN.

   A partnership between a married woman living with her husband and another person is void. She can not be sued at law on a contract of such partnership; but the other member of the firm may be rendered liable therefor, and judgment given against him alone.

5. GARNISHMENT.

   An attachment served on a garnishee indebted to or having effects of the debtor binds debts existing or effects in the garnishee's hands at the date of service of the attachment, as also debts arising or effects coming to the hands of the garnishee until the answer of such garnishee, but not later than such answer.

6. FRAUDULENT CONVEYANCES.

   There may be a money recovery against a fraudulent grantee of property, who has sold such property to a *bona fide* purchaser and realized money therefrom, in favor of the defrauded creditor.

*Campbell & Holt* for plaintiffs in error, cited Code, c. 106, s. 5; Id. s. 14; Id. s. 16; 12 Gratt. 655.

*Simms & Enslow* for defendants in error, cited Drake Att. 589, 590 n.; Id. 458; Code, c. 116, s. 14; 20 W. Va. 521; Code, c. 131, s. 5; Bump. Fraud. Conv. 567–569; 2 Cowp.

432; 6 Wall. 312; 7 Mo. App. 450; 4 Johns. 536; 1 Johns. Ch'y 478; Twyner's Case 1 Lead. Cas.; 3 Ohio St. 246; 112 U. S. 216; 12 How. (U. S.) 39–46; 85 Ind. 434; 2 Thomp. Tr. § 26; 3 Rob. Pr. 520; 1 Wash. 372.

BRANNON, JUDGE:

In an action at law by F. R. Ringold & Co. against J. K. Suiter in the Circuit Court of Cabell county an attachment issued and was served on Miller & Ingalls, as garnishees, on 13th November, 1889, and on 9th December, 1889, said garnishees answered that they were not indebted to Suiter, but that on 4th of November, 1886, said firm had bought certain goods and accounts of Suiter for five thousand dollars, for which they were to pay by giving negotiable notes, and that they had given such notes. The plaintiffs suggested that the garnishees had not fully answered, and the court made an order directing that the question of the indebtedness of said garnishees be submitted to a jury, as provided by statute, to ascertain and determine what effects, if any, said garnishees had in their hands at the date of the service of the attachment, and that the jury should determine, try and return their verdict on the following issues: "(1) Did the garnishees, Mrs. Gertrude Ingalls and W. C. Miller, doing business as partners, owe anything to or have any effects of the said J. K. Suiter in their possession at the date of the service of the attachment herein on them? (2) Was the sale of the goods of J. K. Suiter to Ingalls and Miller upon good conditions, and valid? (3) Did the said Ingalls and Miller, or either of them, at the time they purchased the stock of goods of J. K. Suiter, have any knowledge the defendant J. K. Suiter was in debt, and that the stock of goods was not paid for? (4) Was there any intent on the part of Ingalls and Miller or W. C. Miller to hinder, delay or defraud the creditors of J. K. Suiter at the time the sale was made? (5) Did Ingalls & Miller, or either of them, have knowledge that Suiter was selling his stock of goods to them to prevent his creditors levying on it for their debts?" On March 28, 1890, the plaintiffs propounded to the jury a sixth or additional interrogatory, as follows: "Was W. C. Miller at any time indebted to J. K. Suiter

between the date of service of attachment in this case, viz:
November 13, 1889, and the date of his answer, this March
28, 1899 ?   If so, in what sum ?"

The jury not agreeing, afterwards another trial was had,
and, after the jury had fully heard the evidence and argu-
ment of counsel, the plaintiffs, against objection, pro-
pounded to the jury the sixth interrogatory given above.
The jury returned the following verdict. "Answer to first
interrogatory, Yes; answer to second interrogatory, No;
answer to third interrogatory, Yes; answer to fourth in-
terrogatory, Yes ; answer to fifth interrogatory, Yes; an-
swer to the additional or sixth interrogatory, Yes.   One
thousand five hundred and eighty five dollars."   The de-
fence moved the court to set aside the findings, because con-
trary to law and evidence, and, this motion having been
overruled, the defence moved the court to arrest judgment
because the findings and answers of the jury were too vague
and uncertain to base judgment on; but the court over-
ruled this motion, and rendered judgment against W. C.
Miller, requiring him to pay two hundred and sixty nine
dollars and seventy five cents and costs to the sheriff holding
the attachment.   Miller sued out a writ of error.

I have struggled to sustain the judgment in this case, ren-
dered after two trials, but I am unable to do so.   A judg-
ment against a garnishee must have something on which to
rest, either an answer of the garnishee, sufficient to war-
rant it, or a verdict of a jury of legal certainty, finding facts
to warrant judgment.   Garnishment is purely a creature of
statute ; and we can only follow the procedure pointed out
by the statute; and it is not within the rules of construc-
tion governing common-law actions.   It can not be resorted
to except where the statute expressly authorizes it; and
when the statutory limits have been reached without ac-
complishing the purposes for which it was invoked, we can
not extend its operations into new fields or contrive new
means of applying it to the exigencies of the particular
case.   Wade, Attachm. § 333 ; Drake, Attachm. § 451*a*.

Our statute (section 14, c. 106, Code 1887) provides that
when a garnishee under an attachment appears, he shall be
examined under oath; and that, if it appear from his ex-

amination that at or after service of the attachment he was indebted to the defendant or had in his possession or control effects of the defendant, the court may order him to pay the money due from him, and deliver the effects in his hands. Section 16 provides that, if the plaintiff suggest that the garnishee has not made a full disclosure, the court shall impannel a jury to inquire as to such debts or effects; and as to any liability on the garnishee established by the verdict the court shall proceed, as if it had been confessed by the garnishee. Where a garnishee does not appear the court may hear evidence under section 15 to establish his liability; but where, as in this case, the garnishee answers, and the answer does not warrant judgment, the only resource given by the statute is an inquiry by a jury, and its verdict, either alone or in connection with the answer, constitutes the only basis for judgment against the garnishee.

Now, omitting the sixth interrogatory, the remaining interrogatories and their answers will not warrant a judgment for money, for they give no amount. Now bring to the aid of those five interrogatories the answer of the garnishees. Then we have the facts that the garnishees purchased of Suiter, the debtor, a stock of goods at five thousand dollars, and had them in possession, and that this sale was fraudulent as to creditors. Did this justify a judgment for money? If there be a fraudulent conveyance of property for a fixed consideration, it is certain that the property itself can be subjected, because the conveyance is void as to the creditor. The creditor treats it as void, and against him the purchaser acquires no title. But can the creditor waive relief as against the property, and take a judgment against the purchaser for the purchase-money which he agreed to pay? It would seem at first view that there would be strong reason to say that he could do so; but when we reflect that there is not the slightest privity between the creditor and the fraudulent purchaser, and that the only theory, on which the creditor has right in the matter, is that property liable in his debtor's hands to his debt has been diverted from its payment by a sale to all intents void under the law as to him, just as if it had never been made, it is difficult to see how he can claim the purchase-money under the sale, thus ratifying it.

It is true, the Supreme Court of Ohio, in *Bradford* v. *Beyer,* 17 Ohio St. 388, has held that in such case the creditor might go against the goods, or compel the fraudulent vendee to account for the purchase-price of the goods. No authority is cited to sustain the proposition. I find no cases to support it. If this were so, we could justify the money-judgment in this case. But we do not think the position tenable. If the fraudulent purchaser has sold the property to an innocent purchaser, so that it can not be reached, the injured creditor may have a money-recovery to the value of the property against the purchaser, because the purchaser has thus realized from the sale of property wrongfully diverted from the payment of the seller's debts, and he can not complain if he be made responsible.

This Court, in *Hinton* v. *Ellis,* 27 W. Va. 422, held a fraudulent grantee liable by decree for money for the amount realized by him from a sale to an innocent purchaser of the land which he acquired in fraud of a creditor. The soundness of the principle, on which that case rests, is apparent. A fraudulent grantee ought not to be protected in the possession of the proceeds of the property received by him from the sale of the property. The property in his hands is in trust for the creditor, and when he converts it into money, the fund is impressed with the same trust; and equity would be balked, and the statute defeated, if it could not be followed; otherwise the fraudulent grantee has but to sell the property to an innocent purchaser, so that the creditor can not follow the property, and pocket the money himself, and the fraud is triumphant.

The case of *Hinton* v. *Ellis* is well sustained by authority. *Williamson* v. *Goodwyn,* 9 Gratt. 503; *Ferguson* v. *Hillman,* 55 Wis. 190 (12 N. W. Rep. 389); *Murtha* v. *Curley,* 90 N. Y. 372; *Heath* v. *Page,* 63 Pa. St. 108; *Hopkirk* v. *Randolph,* 2 Brock. 132; *Backhouse* v. *Jett,* 1 Brock. 500; Wait, Fraud. Conv. §§ 177, 178; 2 Bigelow, Frauds, 419, and note 5; Bump. Fraud. Conv. 608, note 2.

In *Fullerton* v. *Viall,* 42 How. Pr. 294, and *Feary* v. *Cummings,* 41 Mich. 376 (1 N. W. Rep. 946) it was held that the money recovery against the fraudulent grantee is not

limited to what he received, but he is accountable for its value.

In this case the facts certified in the bill of exceptions on the motion to set aside the verdict show that after the purchase of the goods, the garnishees, Ingalls and Miller, had sold part of them for three thousand, eight hundred and thirty four dollars. Clearly, if we could read the bill of exceptions to prove this fact in aid of the verdict, we would sustain the judgment; but we can not so read it. We could read it on passing on the motion to set aside the verdict as contrary to evidence, but not to supplement a verdict, nor to help an indefinite and vague verdict, for that would be for the court to perform the jury's function by taking the evidence and incorporating in the verdict facts which the jury itself should have found. The evidence was addressed to the jury for its finding, not to the court for its finding. During the trial the court had nothing to do with the evidence, so far as finding any fact from it was concerned. As well might a court certify from the evidence the amount of the damages which in its opinion the evidence proved, and thus aid a verdict finding for the plaintiff in assumpsit, but silent as to the damages; or as well might a court certify that the evidence showed that a plaintiff in ejectment had an estate in fee, and thus help a verdict failing to find that fact.

Thus, without the aid of the sixth interrogatory, the judgment can not be sustained. Let us bring it into consideration. The evidence developed that the firm of Miller & Ingalls, the garnishees, was made up of a married woman, Mrs. Ingalls, living with her husband, and Miller; and, as such a partnership was void as to the woman, and no judgment could be rendered against her, but the man could be rendered liable alone for firm-debts and liabilities because there was in law no partnership (*Carey* v. *Burruss,* 20 W. Va. 571) and the former interrogatories had viewed Ingalls and Miller as the purchasers of the goods, and directed inquiry to them, it was desirable to have an interrogatory directed to the ascertainment of the liability of Miller alone. And, moreover, notes given by Ingalls and Miller for the goods had been transferred to Daniels, and

Miller had taken up those notes, and given his individual note in their place to Daniels, and Daniels had had it discounted by a bank, Suiter depositing one thousand, five hundred and eighty five dollars with the bank to pay the note of Miller if Miller should not pay it; and, Miller not having paid it, the bank applied Suiter's money to pay it, and thus Miller became on that score indebted to Suiter, January 19, 1890; and this sixth interrogatory was designed to catch this indebtedness arising, at any rate, from money paid by Suiter to the use of Miller.

It will be seen that this sixth interrogatory asks the jury whether Miller was indebted to Suiter at any time between 13th November, 1889, the date of service of the attachment, and the 28th of March, 1890; and that the answer of the garnishees was made on 9th December, 1889, thus allowing the jury to ascertain indebtedness of Miller to Suiter, not only at the date of the service of the attachment or the date of the garnishee's answer, but later, until March 28th. What is the period covered by the lien of an attachment as to debts or effects in the hands of a garnishee? Section 9, c. 106, declares that the lien begins with the service of the attachment, and of course binds debts or effects then in the garnishee's hands; but how long does it continue to attach to and bind new debts arising or effects coming to the garnishee? It certainly continues to attach to new or other debts or effects after that period, for section 14 says that if it appear on examination of the garnishee " that at or after the service of the attachment he was indebted to the defendant, against whom the claim is, or had in his possession or control any goods, chattels, money, securities, or other effects, belonging to the said defendant, the court may order him to pay," *etc.* From this I think the attaching power of the attachment continues up to, but not after, the answer of the garnishee.

Just here we must bear in mind the principle above stated, that the garnishment remedy is of statutory origin, and can go so far only as the words of the statute will allow. In *Railroad Co.* v. *Gallahue,* 12 Gratt. 655, it is said under the Virginia statute, similar to our own as to this

point, that " it seems that the statute in relation to attach-
ments at law refers to debts due from the garnishee to
the defendant at the time of the service of the process upon
the garnishee." The opinion by Judge ALLEN will show
how undecided his mind was on the point, and is unsatis-
isfactory as to this point. We think under our statute that
the attachment covers debts or effects down to the answer
of garnishee. This interrogatory asked the jury to inquire
as to indebtedness of the garnishee after the answer. This
it could not do, as the attachment did not reach beyond the
answer.

There is another reason against this interrogatory. It is
only when the garnishee has not fully disclosed that a jury
acts to inquire into "such debts and effects"—that is, such as
he should have in his answer disclosed; and, as to any debts
or effects found by a jury chargeable to the garnishee, sec-
tion 16 says the court shall proceed in the same manner as
if "they had been confessed by the garnishee." This shows
that the verdict only takes the place of the garnishee's
answer. The garnishee could not on December 9th an-
swer as to a debt arising against him January 19th, after;
and, as the jury inquiry is only to find the true facts as of
the date of the answer, as its office is only to find what a
true and full answer from the garnishee would have shown,
as it simply stands in the shoes of a true answer, it can
not find an indebtedness not existing at the date of the an-
swer.

For reasons given above, we can not call on the
evidence certified to aid the verdict in response to
question 6 to show that the jury must have found
the indebetedness as existing before the answer; and,
even if we could read it, we should find from the
purchase of the goods and the sale of a large amount
of them prior to the answer, ground of a liability prior to
the answer; and from the use of Suiter's money in paying
Miller's note an indebtedness arising after the answer; so
that we could not say the jury found on one ground and
not on the other; but in truth, from the fact the jury
found the indebtedness to be one thousand and five hun-
dred and eighty five dollars, we would be compelled to say

that it based its verdict on the indebtedness accruing after the answer, as that is the exact sum deposited by Suiter to pay Miller's note. True, we might be asked to treat the whole transaction as a fraud from beginning to end, including the new note and deposit for it; but we can not so read the evidence at all. It might also be questioned whether the oath of the jury would apply to this sixth interrogatory, but, as this question will likely not arise again, we do not decide it.

For these reasons we must reverse the order made April 10, 1890, requiring W. C. Miller to pay to the sheriff two hundred and sixty nine dollars and seventy five cents, with interest, and costs ; and, rendering such judgment as the Circuit Court ought to have rendered on the motion in arrest of judgment upon the verdict of the jury, it is here considered that judgment upon the verdict of the jury be arrested, the verdict set aside, and a *venire de novo* be awarded, and the case is remanded for further proceedings.

REVERSED.    REMANDED.