OF THE

# Supreme Court of Appeals

## OF WEST VIRGINIA.

## Fall-Special Term, 1895.

### CHARLESTON.

DOHENY *et al v.* ATLANTIC DYNAMITE CO.

Submitted June 10, 1895—Decided November 9, 1895.

1. EXECUTION—EQUITY OF REDEMPTION—LEVY.
    A mere equity of redemption can not be levied on and sold under a writ of *fieri facias*.

2. EXECUTION—LIEN—EQUITY OF REDEMPTION.
    Under section 2, chapter 141, of the Code, a *fieri facias* is a lien on all the personal property of the judgment debtor, both legal and equitable; but, when such lien attaches to a mere equity, it can only be enforced by a proper proceeding in a court of chancery.

3. AMENDMENT OF JUDGMENT—INNOCENT ERRORS.
    Where innocent errors are committed by the Circuit Court—not sufficient to justify the reversal thereof—the judgment will be amended and affirmed.

SAMUEL V. WOODS for plaintiff in error, cited 34 W. Va.

499; Code, c. 66, s. 3; 11 N. Y. 501; 8 Wend. 339; 22 N. Y. 225; 28 N. Y. 585; 48 N. Y. 556; 17 Wend. 53; 25 Ill. 283; 21 Ind. 238.

DENT, JUDGE:

In the Circuit Court of Marion county, March term, 1890, the Atlantic Dynamite Company filed its petition against Kate Doheny and John Doheny, alleging the following facts, to wit: That petitioner caused an execution in favor of itself, for the sum of one thousand one hundred and seventy eight dollars and eighty cents, with interest thereon from the 8th day of July, 1889, against said John Doheny, to be levied by the sheriff of Marion county on six horses, four carts, and four sets of cart harness, all of which the said Kate Doheny claimed to be her sole and separate property, she being the wife of said John Doheny. On demand of the sheriff, petitioner gave an indemnifying bond, and thereupon said Kate Doheny first gave a suspending bond, and afterwards a forthcoming bond.

Denying that said Kate Doheny had any valid right or claim to said property, petitioner prays that she may be required to assert her claim, that the same may be determined by the court, and the said property subjected to the levy of said execution. Kate Doheny appears and answers said petition; admits that she is not the absolute owner of the property, but that she holds the same by virtue of a deed of trust executed on the 18th day of August, 1888, by said John Doheny to A. L. Taylor, trustee, to secure to her said John Doheny's promissory note bearing date the 30th of July, 1887, for the sum of nine hundred and twenty five dollars, no part of which has been paid; and she prays that her lien may be declared superior in right to petitioner's execution. No replication was filed to this answer, but the court directed an issue to be tried by the jury as to whether Kate Doheny was entitled to said property, or the proceeds or value thereof. The jury found in her favor. The petitioner moved to set aside the verdict, which motion the court overruled, and entered judgment on the verdict.

The petitioner, on writ of error to this Court, assigns the

following errors, to wit: (1) The court erred in its order of December 7, 1889, in directing the issue to be tried, as the issue should have been whether or not the said Kate Doheny was entitled to six horses, four carts, and four sets of harness, mentioned in the proceedings. (2) The court erred in its judgment upon the verdict of the jury, adjudging that the said Kate Doheny was entitled to the proceeds or value of the property levied on by the sheriff of Marion county. (3) The court erred in admitting the deed of trust executed by John Doheny to A. L. Taylor, mentioned and described in bill of exceptions No. 1. (4) The court erred in overruling defendant's motion to set aside the verdict and grant a new trial upon the grounds that the verdict was contrary to the law and evidence. (5) The court erred in refusing to set aside the verdict and grant a new trial upon the affidavit of newly-discovered evidence. (6) For the reason that the claim of the said Kate Doheny to the six horses, four carts, and four sets of cart harness in her answer was purely equitable, and could not be set up at law. *Petroleum Co.* v. *Gale,* 6 W. Va. 536. (7) For further errors appearing on the record. These, to some extent, are abandoned or disregarded in the argument of counsel.

The fifth assignment relating to the after discovery of new evidence, is unfounded. The affidavit fails to show that such evidence could not have been discovered in proper time, had due diligence been exercised before trial. Nor does it appear, from the evidence as given, that if introduced, it would have had any appreciable effect towards producing a different verdict.

In answer to the first two assignments of error, it may be admitted that it is certainly true that the Circuit Court unnecessarily submitted to the jury the question as to whether claimant was entitled to the proceeds or value of the property, and in entering judgment accordingly, as there was no question touching the proceeds or value of the property, but, so far as the record discloses, the property had not been disposed of, but was the real matter in controversy. The court therefore proceeded further than was legal for it to do, in disposing of the proceeds or value of property not in exist-

ence; but, under the circumstances, such action of the court, being in its nature *ultra vires*, must be regarded as a nullity, or harmless error.

The sole matter for determination, and which was submitted to the jury, was whether the claimant, Kate Doheny, had set up such a right to the property as would defeat the demand of the petitioner to subject it to the levy of its execution. To do this, she shows a deed of trust duly executed and recorded, conveying the property to A. L. Taylor, trustee, to secure an indebtedness to her amounting to nine hundred and twenty five dollars. Petitioner objected to the admission of this deed of trust, but this objection seems to be without foundation, and is abandoned in the argument. It further insists that the deed of trust is fraudulent in fact. The evidence introduced tends to sustain the *bona fides* of the trust, and the jury, having heard and weighed it, so determined, and there is no sufficient reason urged for the reversal of this determination.

Counsel, in argument, insists that the use of the language, "which sum, with its interest, he still owes and desires to secure to her, in case he becomes embarrassed with his contract at Haddix Gap, on said railroad," evinces a fraudulent intent on the part of the grantor. This is hardly a fair deduction from this language, but it is simply an expression in words of the reason why he finds it necessary to execute the deed of trust, and it means nothing more than that he is fearful of future embarrassment. Such is the understood, if not the express, reason for all securities. Otherwise, they would be wholly unnecessary. That it is made a specific part of a deed to secure a *bona fide* debt does not render such deed fraudulent. Under the law as it stood at the time of the execution of this trust deed,, a debtor had the right to secure one creditor in preference to others, whether present or future. The *bona fides* of the trust, being established, was sufficient to justify the judgment in favor of the claimant, being the *cestui que trust* and in possession of the property. Under the laws of this state, the trustee in such a deed is a purchaser for value, the holder of the legal title, and therefore the legal owner of the property, entitled to possession

thereof.    He was not a party to this proceeding.    The *cestui que trust* being a party, she had the right to set up the title that was held in trust for her, to defeat the levy of the subsequent execution; and more especially is this the case since it is shown in evidence by the petitioner, in its defense, that immediately after the execution of the deed of trust the property was virtually turned over to and recognized by the debtor to be the property of the *cestui que trust*, by virtue of the deed of trust.    The trustee's title is a legal, and not an equitable  title, and can only be enforced in a court of law.    *Rollins* v. *Hess*, 27 W. Va. 570.

Petitioner insists that notwithstanding the deed of trust, and in subserviency thereto, it is entitled to levy on the equity of redemption, seize and sell the property, pay off the trust, and, if any balance remains, apply it on its execution. "By the common-law, an equitable interest in personal property could not be seized and sold under a writ of *fieri facias*. Hence, wherever the common-law rule has not been changed by statute, the sheriff is not authorized to seize and sell any chattels, unless the defendant in execution has the legal as well as the equitable title thereto." 1 Freem. Ex'ns, § 116. This is the law of this state, in so far as not modified by statute.    2 Tuck. Bl. Comm. 355.    "It seems to be a necessary consequence of the doctrine of trusts, of the separate jurisdictions of courts of law and equity, and of the practice of courts of law, which disregard the doctrines of equity in relation to trusts—that an execution can not be levied on a resulting trust, or any mere equity."    An equity of redemption is a mere equitable interest, and, under the common-law, is not subject to levy or sale.    In some jurisdictions it has been held that where, in addition to the equity of redemption, the grantor has the right to remain in possession of the property for a definite time, he has such an interest in the property as could be levied on and sold, subject to the right of the *cestui que trust* or mortgagee.    Cases cited by petitioner's counsel:    *Hull* v. *Carnley,* 11 N. Y. 501; *Bailey* v. *Burton,* 8 Wend. 339; *Goulet* v. *Asseler,* 22 N. Y. 225; *Manning* v. *Monaghan,* 28 N. Y. 585; *Hamill* v. *Gillespie,* 48 N. Y. 556; *Randall* v. *Cook,* 17 Wend. 53; *Merritt* v. *Niles,* 25 Ill. 283; *Schrader* v.

*Wolflin,* 21 Ind. 283; 1 Freem. Ex'ns, § 117.   Such might pos-
sibly be held to be the law if the property was levied on and
seized while the right and possession of the debtor continue;
but after this right has expired, and he has surrendered the
possession of the property to the trustee, *cestui que trust,*
or mortgagee, the right to levy and seizure is at an end.   1
Freem. Ex'ns, § 117.   The common-law on this subject is
still in full force in this state.   Section 5, chapter 140, of the
Code provides that a writ of *fieri facias* may be levied on the
goods and chattels, including the current money and bank
notes, of the debtor; but there is no provision for a levy on
choses in action, or mere equities.   Section 2, chapter 141,
of the Code extends the execution lien to cover all property
of the debtor, legal or equitable, and hence includes equities
of redemption.   Such lien, when it attaches to a mere equity,
can only be enforced, according to the provisions of the stat-
ute, in a court of equity.   The conclusion is therefore, in-
evitable that an equity of redemption can not be levied on,
and the property in which it exists can not be seized and
sold under a writ of *fieri facias* by reason thereof.   But ad-
mitting the right of the petitioner, by virtue of the levy of
its execution, to seize and sell the property in controversy,
and pay off first the claimant's specific debt, there is a provis-
ion in the deed of trust which prevents the application of any
residue to the payment of its execution lien until all the
debts of the grantor, including petitioner's, are fully satisfi-
ed, thereby wholly defeating the object sought to be accom-
plished by reason of the levy of the execution.   The last
clause of the deed of trust provides that, after the payment of
the expenses of sale and the special debt secured, the trustee
shall pay "the remainder, if any, to said John Doheny, or
any creditor or creditors, *pro rata,* of his, should he have
any;" thereby making a charge on the surplus for the benefit
of all his creditors, *pro rata.*   His equity of redemption in
this surplus, when produced, would amount to nothing until
the debts, including petitioner's, were fully paid off and sat-
isfied.    And, therefore, before petitioner's execution lien
could attach, the debt on which it is founded would cease to
exist, by satisfaction thereof.

We therefore conclude that the Circuit Court committed no error in rendering judgment on the verdict of the jury in favor of the claimant Kate Doheny. The court, however, in its judgment, proceeded further than the law and the evidence justified. The judgment is as follows: "And the court, proceeding to render judgment on said verdict, doth consider that the said Kate Doheny is entitled to the proceeds or value of the property levied upon by the sheriff of Marion county, W. Va., on the 13th day of September, 1889, in the proceedings mentioned in this cause, and that the same is not liable to the debts of her husband. And the court doth order that the said property be released from the levy in the petition set up, and that the said Kate Doheny have and hold the proceeds or value of said property free from the debt of the said Doheny levied thereon as set forth in this petition." As heretofore shown, the property itself, and not the proceeds or value thereof, was in controversy, and the court had nothing to do with the "proceeds or value thereof." The judgment of the court should therefore have been to the following effect: "And the court, proceeding to render judgment on said verdict, doth consider that said Kate Doheny is entitled, by virtue of her trust lien, to hold the property levied on by the sheriff of Marion county, W. Va., on the 13th day of September, 1889, as mentioned in the proceedings in this cause, free and acquit from such levy. It is therefore ordered that the said property be released from said levy, and that the petition of the Atlantic Dynamite Company be dismissed, and that the said company pay said Kate Doheny her costs in this behalf expended."

The judgment thus amended is affirmed.