## CHARLESTON.

JAMES A. BENT *v.* H. W. WEAVER *et als.*

(No. 6265)

Submitted October 9, 1928. Decided October 16, 1928.

*E. L. Maxwell,* and *Mohler, Peters & Kelly,* for plaintiffs in error.

*Spears & Irons,* for defendant in error.

WOODS, JUDGE:

The defendants complain of a judgment of the circuit court of Randolph county, entered on a finding of the trial judge in lieu of a jury upon an agreed statement of facts.

The suit was instituted against H. W. Weaver, Inc., the C. I. T. Corporation and Luther M. Hill, by James A. Bent, a judgment creditor of Hill, to determine said judgment creditor's right to levy on a certain truck, purchased by Hill from H. W. Weaver, Inc., under a conditional sales contract, as against the lien claimed by the C. I. T. Corporation, which now holds the notes executed by Hill at the time of the purchase. Hill bought the truck on October 1, 1927. Prior to this purchase Bent had obtained a judgment against him. On October 20, 1927, Bent sued out an execution under said judgment, and delivered the same to the sheriff at one o'clock the same day. This was docketed in Execution Lien Docket in the Clerk's Office on the following day, and later the same day, the conditional sales contract was also recorded in said office. On November 2, 1927, levy was made on Hill's truck under Bent's execution. Before making the levy the sheriff notified Bent that C. I. T. Corporation claimed title to said truck under its conditional sale contract which had been assigned to it. The trial court held Bent's lien on the truck superior to the lien of the C. I. T. Corporation, and directed sale of the truck by the sheriff under the execution. It is from this judgment that the defendants bring error.

166

The case hinges upon a construction of sections 4 and 5 of chapter 99-A, Code, which are as follows: "(4) Every provision in a conditional sale reserving property in the seller after possession of the goods is delivered to the buyer, shall be valid as to all persons, except as hereinafter otherwise provided. (5) Every provision in a conditional sale reserving property in the seller, shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or *acquires by attachment or levy a lien* upon them, before the contract or a copy thereof shall be recorded as hereinafter provided, unless such contract or copy is so recorded within ten days after the making of the conditional sale." The legal status of Bent, in order to succeed, must be predicated upon the fact that within the language of the act he is a creditor of Hill who has acquired "by attachment or levy a lien" upon the truck. Recurring to the facts controlling—the C. I. T. Corporation did not file its contract within the ten day period. *Before* its filing Bent had caused an execution to be issued on his decretal judgment against Hill and *placed in the hands of the sheriff*. However, the truck in question was not *levied* upon by the officer under said execution, until *after* the vendee had recorded his conditional sales contract. The Uniform Conditional Sales Act, in which the quoted sections are found, was adopted in our state in 1921. Up to the present time only the states of Arizona, Delaware, New Jersey, New York, Pennsylvania, South Dakota and Wisconsin have likewise incorporated it into their laws. None of them adopted it prior to 1919. This explains the paucity of court decisions dealing with its terms. Prior to the adoption of the above act our law dealing with conditional sales made any sale reserving the title in chattels until the same was paid for, or otherwise, and possession delivered to the buyer, void as to creditors of and purchasers without notice, unless a notice of such reservation should be recorded. Code 1913, section 3831. Any attempt at judicial construction of the sections under consideration in this case up to this time has been confined to the courts of New Jersey. That section 5 is not without perplexities in its application was early recognized by the courts of that state. It was said:

"Whether these words 'attachment or levy' can be considered to refer to and include any lien acquired by operation of law or judicial process, including the equitable lien acquired by creditors through the appointment of a receiver, or whether the words must be confined to technical attachment or levy, is, I imagine, going to be the subject of considerable judicial inquiry." *Rapoport* v. *Rapoport Express Company,* 90 N. J. Eq. 519. In *Commercial Credit Company* v. *Vineis,* 98 N. J. L. 376, the court was of opinion that the words "or acquires by attachment or levy a lien", as used in the act, had a fixed and determined meaning peculiar to legal procedure, and obviously imported the precedent institution of a legal proceeding in a court of law or equity, as a basis of the writ and a levy thereunder. Thus, a landlord who distrains the goods of a conditional vendee for rent was not such a creditor as is protected by this section. This Court at least by implication has held to the contrary as to such distraint for rent. *Brown* v. *Woody,* 98 W. Va. 512. Later decisions of the New Jersey court held in effect that section 5 was not broad enough, and was not intended to include the idea of the property being in the possession of a receiver, and did not give such possession the protection and effect of a lien or levy. *Depue* v. *Depue & Company,* 98 N. J. Eq. 461; *Koerner* v. *Paper Company,* 94 N. J. Eq. 655. The Wisconsin Supreme Court, on the grounds of logic, equity and uniformity, adopted the construction given said sections in the two last mentioned cases. The court held that the taking possession by a receiver of the assets of a corporation that makes a voluntary assignment does not constitute a "legal" levy within the meaning of section 5, even though the appointment of a receiver may be said to constitute an equitable levy. *Mlodzik* v. *Ackerman Oil Company,* 191 Wis. 233. According to the foregoing cases, a creditor to be protected under this section, must be one who has acquired a lien by attachment or by judicial process and a levy thereunder. In the light of these decisions let us view the case here under consideration.

The words "levy" and "lien" used in the act have a well defined meaning in our decisions. The expression, however, acquired by "levy a lien" is inapt under the law of this state.

A lien is a hold or claim upon the property of another as a security for some debt or charge. *Mahan* v. *Bitting*, 103 W. Va. 449. It is ordinarily a creation of the statute. While it was a doctrine at common law that the lien of an execution from a judgment or decree of a court of record relates to its teste, and attached to all personalty owned by the debtor between the teste and the levy, so as to defeat the title of all intermediate purchasers, this rule was abrogated by our statute providing that it shall bind what it may be levied on only from the time the writ is delivered to the officer to be executed. Code, chapter 140, section 2. This section was taken from the Code of Virginia on the formation of our state. And subsequent judicial decisions of both states have been consonant therewith. *B. & O. R. R. Co.* v. *Wilson*, 2 W. Va. 528; *Huling* v. *Cabell*, 9 W. Va. 522; *Mountain State Car Co.* v. *Solof*, 97 W. Va. 196; *Pegram* v. *May*, 9 Leigh 176; *Puryear* v. *Taylor*, 12 Grat. 401. We are not unmindful of the fact, however, that in *Humphrey* v. *Hitt*, 6 Gratt. 509, Justice Baldwin said: "The delivery of the execution to the sheriff is not properly speaking a lien upon the goods of the debtor; it is the levy which makes the lien."

The word "levy" likewise has been judicially defined. By levying an execution is meant the setting aside of specific property from the general property of the debtor, placing the same in the custody of the law until it can be sold and applied to the payment of the execution. *Walker* v. *Commonwealth*, 18 Grat. 13. It is a settled rule of statutory construction that where words of common usage and meaning are employed, effect must be given to each word if possible. To hold here that all lien creditors were protected under the terms of the statute would be to wholly ignore the use of the word "levy". As we have shown the latter word has as well defined meaning in the law as the former. It will be noted that the act protects the creditor who by attachment seizes the property. May we not imply by analogy that the intention of the law makers was to protect also a creditor, who by judicial process or otherwise, had obtained a lien and made a levy thereunder? A consideration of the statute leads us to the inescapable conclusion that this is so. Is there not

thus plainly evinced an intention to reward the diligent creditor? Resolving whatever ambiguity there is in said section, by giving it this construction, we give effect to both words. It may be said that by this construction we deprive Bent of his lien that had already attached before the recordation of the sales contract. Had the C. I. T. Corporation filed its contract for recordation within ten days from its date, the statute makes the liens of all creditors attaching during that period and before the filing, void and of no effect as to the unpaid purchase price. While the conditional sales contract was not filed within this period, we refer to it for the purpose of showing the intention of the Legislature by the act, under certain conditions, to deprive other lienors under judicial process, or otherwise, of the benefits of their liens. If the Legislature has the right to thus wholly nullify existing liens of creditors in the interest of the vendor in a conditional sales contract, would it not have the right to provide that only such creditors who have made a levy under their lien should be protected should the vendor fail to file his contract before such levy? Then again, as the lien of an execution is made by statute to date from the levy in some states; in others, from the time the writ goes into the hands of the officer; and in others, from the teste as at common law, may we not conclude that the Legislature had this contrariety of legislative action in mind, and in order to make the act uniform in its application in this regard, drew the line of protected creditors at actual levying creditors? We think so. But, it is contended that it is contrary to public policy to permit exceptional favors to persons reserving a title. The answer to this contention is that the public policy of the state is the policy which its people speaking through their Legislature adopt, and where a legislative act is clear and explicit, the courts are bound by and must obey it unless it contravenes some provision of the constitution.

It follows from what has been said that the judgment of the lower court must be reversed.

*Reversed and remanded.*