R. S. CORSON COMPANY, INC., *a Corporation*

*v.*

RAYMOND HARTMAN AND ROBERT LANDIN

(No. 11065)

Submitted September 29, 1959.   Decided November 24, 1959.

*Farmer & Farmer, Geo. R. Farmer,* for plaintiff in error.

*Milford L. Gibson, Neil A. Reed,* for defendants in error.

GIVEN, PRESIDENT:

This is a review of a proceeding on suggestion. The summons on suggestion was issued in aid of the collection of an execution issued on a judgment rendered, April 10, 1958, in favor of R. S. Corson Company, Inc., a corporation, herein designated Corson, against White Appliance Company, a corporation, for $4,342.86, in the Circuit Court of Preston County. The defendants named in the suggestion, Raymond Hartman and Robert Landin, answered, alleging that they were not indebted, and were not liable in any sum, to the judgment debtor, and that they had no personal property of the judgment debtor in their possession or under their control. Corson then suggested that defendants had not fully disclosed their liabilities, and, the parties having waived a jury, the issue raised was tried by the court, without a jury, pursuant to provisions of Code, 38-5-18. The trial court found in favor of defendants and dismissed the proceeding. A writ of error was granted Corson.

Corson held a contract for the construction of an addition to the Monongalia General Hospital, at Morgantown. White Appliance Company, on May 24, 1956, was awarded a subcontract by Corson, whereby the subcontractor agreed to complete the plumbing, heating, ventilating and air conditioning required by the principal contract, for which it was to receive $86,055.00. Payment was to be made by Corson to the subcontractor as the work progressed, but Corson was to retain, and did retain, ten per cent of the subcontract price, as security for the per-

formance of the subcontract. White Appliance Company defaulted in its performance and Corson, after completing the work to have been performed by the subcontractor, and after having applied the balance owing the subcontractor, including the ten per cent withheld, to the discharge of the indebtedness chargeable to the subcontractor, obtained the judgment sought to be enforced by the execution and suggestion.

All of the outstanding capital stock of the White Appliance Company, one hundred shares of the par value of one hundred dollars per share, was owned, in equal proportions, by Cecil O. White, Raymond Hartman, Robert Landin and Carl Hilldale. White was president and general manager of the corporation. Landin was its vice president, and Hartman was its secretary-treasurer. The four stockholders constituted its board of directors. White was the only officer receiving any compensation from the corporation.

On March 16, 1957, at a meeting of the board of directors, a motion was made, seconded and carried unanimously, whereby the corporation was authorized to lend to Cecil O. White the sum of nine thousand dollars, for the sole purpose of purchasing the entire stock owned by the other three stockholders, Hartman, Landin and Hilldale. The transaction was consummated by the delivery of a check of the corporation to White, endorsement of the check by White to Hartman, who accounted to Landin and Hilldale for their proportionate parts thereof, three thousand dollars each, and by assignment and delivery of the stock certificates to White. White agreed to execute to the White Appliance Company his promissory note for the nine thousand dollar loan, which was not done, but the account books of the corporation reflected the indebtedness owing the corporation from White. The amount received through the transaction by each of the three stockholders who transferred their stock represented approximately the original cost of the stock, plus legal interest.

The minutes of the meeting of March 16, 1957, disclosed that "All of the outstanding stock in the Corpora-

tion was also represented in person"; that "each of said stockholders agreed to sell their stock to the said Cecil O. White for said sum"; that the "stock of said three (3) stockholders was assigned and transferred to Cecil O. White"; and that "it was unanimously agreed that the said Cecil O. White, Raymond Hartman, Robert F. Landin and Carl Hilldale all sign these minutes, and by their signatures signify their consent and approval of the business transacted at said meeting and these minutes which set out the business transacted at said meeting". The minutes were signed by each of the four stockholders. Each of the stockholders testified to the effect that the minutes correctly described the business transacted.

It is contended by Corson that the transaction whereby the stock was transferred to Cecil O. White was void, for the reason that it was authorized by interested directors; that the transaction was fraudulent; that it hindered or delayed creditors of the White Appliance Company, especially Corson, in the collection of their claims; that the transaction was, as to White Appliance Company, voluntary; that the liability of Hartman and Landin, defendants named in the suggestion, to the White Appliance Company, as to the sums received by them, respectively, for their stock sold to White, is subject to the lien of the execution; and that such sums or liabilities are reachable by way of a proceeding on suggestion.

The amount of the indebtedness of White Appliance Company owing or due at the time of the transfer of the stock is not clearly shown, though it seems clear that debts in the approximate amount of $3,100.00 were more than sixty days past due, one of which, in the amount of $1,636.33, long in dispute, had been reduced to judgment. The judgment was later satisfied. After the payment of the nine thousand dollar check, the White Appliance Company had in a bank account approximately five thousand dollars, and a financial statement, prepared for it by a reputable public accountant, disclosed that, as of April 30, 1957, the assets of the corporation were more than

sufficient to discharge all outstanding obligations of the corporation.

Though the capital stock of the White Appliance Company had become somewhat impaired prior to April 30, 1956, its book value increased between that date and April 30, 1957, the date of the financial report. There can be no doubt, however, that the three stockholders who transferred their stock to White were, and had been for some time, dissatisfied with the management of the affairs of the corporation by Cecil O. White, and that dissolution of the corporation was contemplated, in the event Cecil O. White refused to purchase the stock of the other three stockholders. The corporation had never paid any dividends to the stockholders.

Subsequent to the time of the transfer of the stock Corson paid to White Appliance Company, on the subcontract price, the sum of $9,924.30. In addition to that sum, at the time of the transfer Corson held in its hands the ten per cent of the amounts theretofore paid White, $8,105.50. The financial statement mentioned disclosed that, as of April 30, 1957, the amount of "accounts receivable" was $23,713.50, and that the amount of "accounts payable" was $23,922.06.

The testimony of the stockholders is to the effect that, before the transaction, advice from the counsel of the corporation had been received to the effect that the transaction whereby the stock would be transferred would be recognized as valid only in the event the corporation at the time was solvent and that, from their own knowledge of the affairs of the corporation, and from an examination of its books and accounts, they believed the corporation to be solvent. White testified to the effect that he believed "the company would continue to go ahead and would prosper and be successful". Each of the stockholders testified to the effect that no intention to defraud any creditor existed. The corporate attorney was present at the meeting when the transfer of the stock was authorized. He testified in behalf of the defendants.

At the time of default of the White Appliance Company, performance had been completed under the subcontract except as to "about one per cent of the complete contract". The amount expended by Corson for such completion was $709.50, but the outstanding indebtedness chargeable to White Appliance Company under the subcontract amounted to $14,205.41, the major portion of which, at least, was included in "bills payable" in the financial statement of April 30, 1957. It was not until about July, 1957, that Corson became aware that White Appliance Company would probably not fully perform the requirements of the subcontract, and the last payment made to White Appliance Company for work thereunder was on June 18, 1957, in the amount of $3,600.00. At the time of the stock transfer, Cecil O. White was the owner of real estate, and certain personal property. His equity in the real estate was approximately nine thousand dollars, and he later executed a mortgage thereon to secure payment of a debt or debts owed by the White Appliance Company, apparently, at the time of the stock transfer. The public accountant who prepared the financial report as of April 30, 1957, testified to the effect that the books of the corporation reflected "no tax liens or judgments or deeds of trust against White Appliance Company". The financial statement of April 30, 1957, indicated a value of merchandise, equipment and tools, after deductions for depreciation, of approximately $14,998.34.

Code, 38-5-10, provides that "Upon a suggestion by the judgment creditor that some person is indebted or liable to the judgment debtor or has in his possession or under his control personal property belonging to the judgment debtor * * * and which debt or liability or property is subject to the judgment creditor's writ of fieri facias, a summons against such person may be sued out * * * requiring such person to answer such suggestion in writing and under oath * * *". Section 18 of the same article provides that when it is suggested that the person answering "has not fully disclosed the debts or liabilities due by him * * * the court shall cause a jury to be impaneled, without any formal pleadings, to inquire as to

such debt or liabilities or property * * * unless a trial by jury be waived by the parties * * *". It is significant that the statute requires disclosure only as to the "debts or liabilities due", and that the issue must be determined by "trial by jury", unless a jury is waived.

Section 20 of the same article provides that "For the recovery of any personal property or any claim on which a writ of fieri facias or an execution is a lien under this article, or the enforcement of any liability in respect to any such property, or for the enforcement of any debt or liability of any person to the judgment debtor, on which the writ of fieri facias or execution is a lien, a suit may be maintained by the judgment creditor either at law or in equity, as the case may require". Prior to the adoption of the 1931 official Code of West Virginia, except as to provisions not here material, this section was embodied in Section 15 of Chapter 141 of Barnes 1923 Code of West Virginia. The Reviser's Note of the 1931 revision points out that "It is made plain by this section that the procedure provided for here is available, not only where garnishment could not be resorted to, but also as an alternative to garnishment. This will be especially useful in cases where the claim is unliquidated or disputed by the person garnisheed or sued".

Relying principally on provisions of Code, 31-1-69, and holdings of *Chounis* v. *Laing,* 125 W. Va. 275, 23 S. E. 2d 628, Corson vigorously contends that the action of the board of directors of White Appliance Company, in making the loan to Cecil O. White, was ultra vires and void. We think, however, that neither the statute, nor the case cited, can be given controlling effect, for the reason that the facts of the instant case do not bring it under the influence of the statute or the cited case. The facts in the cited case reveal that the action of the board of directors complained of was in prejudice of rights of minority stockholders, while in the instant case all stockholders participated in, gave "their consent and approval" to, the making of the loan to Cecil O. White. We do not, of course, say that a loan made by a corporation, with

consent of all the stockholders, can not be held fraudulent and void as to creditors of a corporation. As to that proposition, insofar as applicable to the instant case, it is sufficient to point out that there was very substantial evidence, detailed above, supporting the trial court's finding in favor of the persons suggested. In *Thurmond* v. *Paragon Colliery Co.*, 82 W. Va. 49, 95 S. E. 816, 52 A.L.R. 235n, we held: "1. A shareholder in a private corporation is not denied the right to vote on a matter affecting the corporate interest, in a stockholders' meeting regularly called, because his personal interest in such matter conflicts with the interest of the corporation. 2. A contract made by the directors of a corporation, which was either authorized or subsequently ratified by a majority vote of the stockholders in meeting regularly assembled, is not affected by the fact that one or more of the directors had an interest in such contract other than as stockholders in such corporation". These holdings, of course, do not preclude the rights of creditors as to transactions imbued or saturated with fraud. Other statutes govern and afford creditors protection as to such rights, in circumstances of fraud.

Code, 40-1-1, as amended, provides that transactions made "with intent to delay, hinder, or defraud creditors, purchasers, or other persons, of or from what they are or may be lawfully entitled to, shall as to such creditors * * * be void * * *". The language is broad and sweeping, yet there are limitations. See *Mullens* v. *Frazer*, 134 W. Va. 409, 59 S. E. 2d 694; *Scruggs* v. *Jefferson Standard Life Insurance Co.*, 125 W. Va. 89, 23 S. E. 2d 74; *Southern Cooperative Foundry Company* v. *Warlick Furniture Co.*, 117 W. Va. 336, 185 S. E. 773; *Bankhead* v. *Baughman*, 115 W. Va. 483, 176 S. E. 854; *Mountain State Motor Car Co.* v. *Solof*, 97 W. Va. 196, 124 S. E. 824; *Lambert* v. *Huff, Andrews & Thomas Co.*, 82 W. Va. 362, 95 S. E. 1031, 1 A.L.R. 650; *Peale* v. *Grossman*, 70 W. Va. 1, 73 S. E. 46; *Ringold* v. *Suiter*, 35 W. Va. 186, 13 S. E. 46; *Love* v. *Tinsley*, 32 W. Va. 25, 9 S. E. 44; 8 M.J., Executions, Section 32.

Code, 40-1-3, provides that "Every transfer or charge which is not upon consideration deemed valuable in law shall be void as to creditors whose debts shall have been contracted at the time it was made; but shall not, upon that account merely, be void as to creditors whose debts shall have been contracted * * * after it was made; and though it be decreed to be void as to a prior creditor because voluntary, it shall not for that cause be decreed to be void as to subsequent creditors or purchasers".

It is significant, we think, that the section clearly contemplates the entry of a decree determining the question of whether "the transfer or charge" was made voluntarily, and, though the transfer or charge be voluntary, in the absence of fraud it can not "be decreed to be void" as to subsequent creditors. While it is true that subsequent creditors may attack a conveyance because of fraud against existing creditors, yet the intent to defraud existing creditors must be established, which, as above pointed out, was not done in the instant case, or, at least, the finding of the trial court, to the effect that the transfer complained of was not fraudulent, was very substantially supported. See *Kesling* v. *Ford Mick et al.*, 103 W. Va. 485, 138 S. E. 386; *Graham Grocery Co.* v. *Chase*, 75 W. Va. 775, 84 S. E. 785; *Edwards Manufacturing Co.* v. *Carr*, 65 W. Va. 673, 64 S. E. 1030.

Code, 38-4-8, provides that "A writ of fieri facias or execution shall create a lien, from the time it is delivered to the sheriff or other officer to be executed, upon all of the personal property, or the estate or interest therein, owned by the judgment debtor at the time of such delivery of the writ, or which he may acquire on or before the return day thereof, although such property was not levied on or capable of being levied on * * * [and] Such lien shall continue beyond the return day of the execution, whether the writ was levied or not * * *". It is significant that this statute clearly recognizes that the lien may attach to property "not capable of being levied on", and that any lien created by the issuance and delivery of the execution

"shall continue beyond the return day of the execution".

In *Southern Cooperative Foundry Company* v. *Warlick Furniture Company*, 117 W. Va. 336, 185 S. E. 773, we held: "1. Under Code 38-4-8, when the lien of an execution has once attached, the lien survives the execution and expires only when the right of the judgment creditor to levy expires, unless he abandons the writ or perverts it to a use actively or constructively fraudulent". It seems clear, therefore, that the lien of the execution issued on the judgment rendered in favor of Corson attached to any liability or claim of White Appliance Company against Hartman and Landin growing out of the stock transaction, and that such lien would not terminate on return of the execution unsatisfied. See *Ohio Valley Bank* v. *Minter*, 108 W. Va. 58, 150 S. E. 366; *Lambert* v. *Huff, Andrews & Thomas Co.*, 82 W. Va. 362, 95 S. E. 1031, 1 A.L.R. 650; *Doheny* v. *Atlantic Dynamite Co.*, 41 W. Va. 1, 23 S. E. 525. The question remains, however, whether such liability is "capable of being levied on" by the officer holding the execution, or whether such liability can be reached by way of a suggestion on the execution. Since a suggestion can issue only as an aid to the officer in the collection of the execution, it seems obvious that if the liability is "disputed by the person garnisheed", it can not be levied on under the execution, for such officer has no power to determine such a dispute. Such an issue must be determined in a proper forum, on issues drawn by pleadings.

In *Louis Stix & Co.* v. *York, et al.*, 84 W. Va. 446, 100 S. E. 221, we held: "The remedy given by section 15 of chapter 141 of the Code, to enforce the lien of an execution upon property owned by the judgment debtor not capable of manual seizure, possession and delivery, and sale by the officer under the execution, that is by suit in equity by or in the name of the officer, is exclusive of all other remedies. A judgment creditor cannot in his own name maintain such suit." In the opinion, after referring to the statute now incorporated in Code, 38-5-20, the Court said: "* * * we are disposed to hold that the

remedy prescribed by the statute is exclusive of all others and must be pursued. The statute gives the lien and prescribes the remedy". True, the exact point there being considered was whether a proceeding under that statute must be prosecuted in the name of the officer holding the execution (since amended), but the Court plainly says that the statute provides the "exclusive" remedy in such cases.

In *Swann, Admr.* v. *Summers,* 19 W. Va. 115, liability was suggested against Kanawha Board, as successor to the James River and Kanawha Company, against whom a judgment had been obtained. After pointing out that no judgment could, under the garnishee process, be rendered, the rights sought to be attached being neither a "debt due" nor estate in the hands of the garnishee, but "simply a liability, which may be enforced in a court of equity", the Court directed attention to the provision of the statute now incorporated in Code, 38-5-20, saying that the section "provides an efficient mode perfectly suited to all such cases". The Court concluded that the "garnishee-process is obviously entirely unsuited to enforce" such liability.

In *Emmons-Hawkins Hardware Company* v. *Sizemore, Trading, etc.,* 106 W. Va. 259, 145 S. E. 438, 61 A.L.R. 365n, recovery was permitted in a proceeding on a suggestion, where liability arose under the Bulk Sales Law, and the Court held, in Point 1 of the Syllabus, that "It is the general rule that a plaintiff can recover on a suggestion only when the garnishee is liable to the defendant", citing, in the opinion, *Swann, Admr.* v. *Summers, supra.* True, it is pointed out in the *Sizemore* case that an exception exists "Where there has been a fraudulent conveyance of the defendant's property", but, if such an exception is applicable to the facts of the instant case, the question of fraud has been resolved against Corson by the finding of the trial court, as above noted. See *Mullens* v. *Frazer,* 134 W. Va. 409, 59 S. E. 2d 694; *Johnston* v. *Terry,* 128 W. Va. 94, 36 S. E. 2d 489. Moreover, a fraudulent conveyance involves specific, identi-

fiable property, "capable of being levied on" under an execution, or capable of "manual seizure, possession and delivery", not a mere potential right capable of being determined and enforced in a proper proceeding.

In *Doheny* v. *Atlantic Dynamite Co.*, 41 W. Va. 1, 23 S. E. 525, we held: "1. A mere equity of redemption can not be levied on and sold under a writ of *fieri facias*. 2. Under section 2, chapter 141, of the Code, a *fieri facias* is a lien on all the personal property of the judgment debtor, both legal and equitable; but, when such lien attaches to a mere equity, it can only be enforced by a proper proceeding in a court of chancery." In the opinion the Court said: "Section 2, chapter 141, of the Code extends the execution lien to cover all property of the debtor, legal or equitable, and hence includes equities of redemption. Such lien, when it attaches to a mere equity, can only be enforced, according to the provisions of the statute, in a court of equity. The conclusion is therefore, inevitable that an equity of redemption can not be levied on, and the property in which it exists can not be seized and sold under a writ of *fieri facias* by reason thereof".

In *Lambert* v. *Huff, Andrews & Thomas Co.*, 82 W. Va. 362, 95 S. E. 1031, 1 A.L.R. 650, we held: "1. Though an execution creates a lien upon shares of the capital stock of a corporation, owned by the debtor, such shares cannot be seized and sold under an execution, by the officer holding it, because they are intangible property in the nature of choses in action and incapable of manual seizure, possession or delivery. 2. For the same reason, they are not such estate or effects of the execution debtor in the hands of the corporation to which they pertain, as can be delivered by it to an officer, or ordered to be delivered to him, in a proceeding founded upon a suggestion, authorized by secs. 10, 11, 12 and 13 of ch. 141 of the Code."

In *Bent* v. *Weaver*, 106 W. Va. 164, 168, 145 S. E. 594, the Court said: "The word 'levy' likewise has been judicially defined. By levying an execution is meant the

setting aside of specific property from the general property of the debtor, placing the same in the custody of the law until it can be sold and applied to the payment of the execution. *Walker* v. *Commonwealth,* 18 Grat, 13."

These authorities make it certain, we believe, that the liabilities of Hartman and Landin, defendants in the suggestion proceeding, to the judgment debtor, White Appliance Company, assuming that such liabilities may be established by proper proof in a proper proceeding, are not such as may be reached in a proceeding on suggestion. Obviously, the "trial by jury" afforded, without pleadings, under Code, 38-5-18, is not a proper remedy to determine "mere equity" rights or interests. *Doheny* v. *Atlantic Dynamite Co., supra.* That section has no application where such rights or liabilities are in "dispute", where not capable of "being levied on" under an execution, *Doheny* v. *Atlantic Dynamite Co., supra,* where not "capable of manual seizure, possession and delivery, and sale by the officer under the execution", *Louis Stix & Co.* v. *York, supra,* or where not "debts due" the judgment debtor, *Swann, Admr.* v. *Summers, supra.* That section furnishes a remedy only for the purpose of determining liability or ownership, or rights of possession or control, as to specific, identifiable personal property.

The judgment of the Circuit Court of Preston County is affirmed, without prejudice to Corson to prosecute such further proceeding to enforce its lien, as it may be advised.

*Affirmed, without prejudice.*