In re Lila Lee Hall DeMARCO, Debtor.

Robert G. DURNAL, Trustee, Plaintiff,

v.

BORG–WARNER ACCEPTANCE CORP. and Charles D. Hall, Defendants.

Bankruptcy No. 88–00198–C.
Adv. No. 89–0029.

United States Bankruptcy Court,
N.D. West Virginia,
Wheeling Division.

May 14, 1990.

Robert G. Durnal, Buckhannon, W.Va., for plaintiff.

Daniel P. Fry, Wheeling, W.Va., for defendant Borg–Warner.

James W. Martin, Jr., Clarksburg, W.Va., for defendant Charles D. Hall.

MEMORANDUM OPINION
AND ORDER

L. EDWARD FRIEND, II, Bankruptcy Judge.

The issue in this adversary proceeding is one of ownership with respect to funds which were held in the name of the debtor and her father in a joint survivorship account. The debtor died during the bankruptcy proceedings. For the reasons that follow, the Court finds that ownership of these accounts vested in the father at the time of the debtor's death.

The factual matters are not in dispute. Prior to the filing of the debtor's bankruptcy petition, the debtor's father, Charles D. Hall, purchased three Certificates of Deposit at Atlantic Financial Federal of West Virginia in the amounts of $25,000, $11,680 and $8,400. The certificates were purchased by Mr. Hall with his own funds, but were purchased in the names of Charles D. Hall and his daughter, Lila DeMarco (the debtor).

After the filing of the bankruptcy petition, Borg–Warner Acceptance Corporation, a prepetition creditor of the debtor, obtained a default judgment against the debtor and filed a suggestion upon Atlantic Financial. Atlantic Financial turned over to Borg–Warner the amounts represented by the certificates of deposit it held in the name of the debtor and her father, Charles D. Hall. The trustee instituted this adver-

sary proceeding against Borg–Warner and Charles D. Hall asserting that the funds were property of the debtor's bankruptcy estate. Charles D. Hall filed a crossclaim wherein he alleged that the funds held by the trustee were his alone and that no part thereof belonged to the bankruptcy estate or Borg–Warner.

A joint motion for summary judgment was filed on behalf of the trustee and Charles D. Hall which resulted in an agreed order among the parties. Pursuant to the agreed order, Borg–Warner paid to the trustee the sum of $23,169.88, pending a resolution by this court, representing the amount realized from the suggestion. By the same order, Borg–Warner was dismissed from this adversary proceeding. The dispute as to the ownership of the funds is now between the trustee and Charles D. Hall. Memorandums setting forth the respective positions of the trustee and Charles D. Hall have been filed with the Court and the Court must now determine whether this matter may be decided on the memorandums filed with the Court or whether a factual hearing is necessary.

The trustee argues that the bankruptcy estate should be entitled to one half of the funds representing the certificates under the following theories:

1. The act of filing bankruptcy vests the debtor's interest in the certificates in the trustee because the filing destroys the joint tenancy with the right of survivorship. Therefore, the trustee and Charles D. Hall hold as tenants in common. Thus, the bankruptcy estate is entitled to one half the funds representing the certificates and Charles D. Hall is entitled to the other one half.

2. The post-petition attachment of the certificates by Borg–Warner prior to the debtor's death severed the joint tenancy with the right of survivorship. Therefore, prior to the debtor's death, the trustee and Charles D. Hall owned the certificates as tenants in common. Accordingly, upon the debtor's death, the trustee asserts that the bankruptcy estate is entitled to one-half of the funds and that Charles D. Hall is entitled to the other one-half.

■ A discussion of the trustee's second argument with respect to the severance of the joint tenancy with the right of survivorship by Borg–Warner's attachment is unnecessary. Pursuant to the hereinabove mentioned agreed order entered into by all parties to this case, Borg–Warner returned all monies obtained through the suggestion to the trustee to hold pending the outcome of the case. Borg–Warner's judgment was post-petition as was the suggestion of the certificates. Borg–Warner's post-petition actions were in violation of the automatic stay. As such, Borg–Warner's actions are void and without effect. 2 *Collier on Bankruptcy*, § 362.11 at 362–77 (15th Ed., 1980) n. 2 and citations quoted therein. Accordingly, Borg–Warner's actions did not effect a severance of the joint tenancy with the right of survivorship ownership between the bankruptcy estate and Charles D. Hall. Therefore, the factual basis of this decision will be as if the funds still remained in the bank in the joint names of the debtor and her father, Charles D. Hall.

Charles D. Hall's counsel argues that Charles D. Hall is entitled to all the funds representing the three certificates under the following theories:

1. The act of filing bankruptcy does not destroy the joint tenancy with the right of survivorship in the three certificates. At the time of the filing of the bankruptcy petition, Charles D. Hall and Lila DeMarco owned the certificates as joint tenants with the right of survivorship. Thus, upon the filing of the bankruptcy petition, the trustee would take whatever interest Lila DeMarco, the debtor, had. The trustee's interest is fixed at the petition date. Therefore, Charles D. Hall and the trustee owned the certificates as joint tenants with the right of survivorship under West Virginia law. The subsequent post-petition death of the debtor divested the debtor and accordingly, the trustee of any interest in the certificates. Thus, upon Lila DeMarco's death, Charles D. Hall is entitled to all the funds representing the three certificates under the survivorship rights of the joint tenancy ownership.

2. Even if the Court does find that the act of filing bankruptcy destroyed the joint tenancy with the right of survivorship ownership and the trustee and Charles D. Hall hold the certificates as tenants in common, Charles D. Hall's counsel alleges that he can rebut the presumption of joint ownership pursuant to West Virginia Code § 31–A–4–33 with "competent evidence". *Dorsey v. Short*, 157 W.Va. 866, 205 S.E.2d 687 (1974); *Simmons v. Simmons*, 298 S.E.2d 144 (W.Va.1982).

It is the Court's opinion that if a finding is made that the filing of the bankruptcy petition did not destroy the joint tenancy with the right of survivorship, then upon the death of the debtor, Charles D. Hall would be entitled to all the funds representing the certificates. The issue with respect to rebutting the joint ownership created under West Virginia Code § 31A–4–33 would be moot.

The question is whether by the filing of the bankruptcy petition, the debtor terminated the joint tenancy with survivorship interest. Under the Bankruptcy Act of 1898, the question of what was property under § 70(a) was a federal question. *Chicago Board of Trade v. Johnson*, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924). The question of what constitutes property within the meaning of § 541 of the Bankruptcy Code apparently continues to remain a federal question. Report of the Committee on the Judiciary, House of Representatives, To Accompany H.R. 8200, H.R.Rep, No. 95–595, 95th Cong., 1st Sess. 367–68 (1977); Report of the Committee on the Judiciary, United States Senate, To Accompany S. 2266, S.Rep. No. 95–989, 95 United States Senate, To Accompany S. 2266, S.Rep. No. 95–989, 95 Cong., 2nd Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; 4 Collier on Bankruptcy 541.02 at 541–12 (15th ed. 1979). However in the absence of a federal law of property, the existence and nature of the debtor's interest in joint tenancies are determined by nonbankruptcy law. 4 Collier on Bankruptcy 541.02 at 541–10 (15th ed. 1979). The Fourth Circuit has ruled that the filing of a bankruptcy petition solely by the husband does not sever the estate of tenancy by the entirety in either real or personal property held as such by the debtor and his wife under Maryland law. That court also held that the debtor's interest in the entirety property is property of the estate under § 541(a)(1) and that the debtor may exempt the property under § 522(b)(2)(B). *Greenblatt v. Ford*, 638 F.2d 14 (4th Cir.1981) affirming *In re Ford*, 3 B.R. 559 (Bkrtcy.D. Md.1980).

The Bankruptcy Court in *In re Ford*, states:

> The trustee contends that the filing of the petition acts as an immediate severance of the estate by the entireties since the debtor's interest passes immediately to the trustee thereby severing the time honored unities of time, title, identity of interest, and possession, necessary to preserve the estate by the entireties. The court disagrees. The legislative history consistently takes the position, ultimately enacted in § 541(a)(1), that it is the debtor's undivided interest in tenants by the entireties property which becomes property of the estate. There is no severance of the unities when the debtor's interest passes to the estate. The trustee merely obtains and retains custody of the debtor's undivided interest consisting of the same unities, intact and unaltered, as they existed immediately prior to the filing of the petition, until such time as that interest, still intact and unaltered, is exempted from the estate under § 522(b)(2)(B) ...

> For all of the above reasons, the court concludes that the debtor's undivided interest in property which he held immediately before the commencement of the case as a tenant by the entirety with his nonbankrupt spouse, as that tenancy is presently constituted under Maryland law is property of the estate in bankruptcy under the Code, that the interest is subject to administration under § 541(a)(1), and that the tenancy by the entirety is not severed by the filing of a petition under the Code.

West Virginia has abolished tenancies by the entireties by statute. (West Virginia

Code § 36–1–19.) *Wartenburg v. Wartenburg*, 143 W.Va. 141, 100 S.E.2d 562 (1957). However, under West Virginia Code § 36–1–20, joint tenancies with survivorship continue to flourish here.

Bankruptcy Code § 522(b) provides that notwithstanding § 541, an individual may exempt from property of the estate:

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; *and*

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or *joint tenant* to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law. (Emphasis added.)

West Virginia Code § 38–10–4, *Exemptions of Property in Bankruptcy Proceedings*, provides that any person who files a petition under the "Bankruptcy Reform Act of 1978" may exempt from property of the estate "the debtor's interest, not to exceed seven thousand five hundred dollars in value, in real property or personal property . . ." Therefore, in West Virginia each joint tenant debtor may exempt from the property of the estate his interest in the joint tenancy in the value of $7,500. Bankruptcy Code § 522(b)(2)(B) treats tenants by the entireties and joint tenants identically. If the filing of a bankruptcy does not sever the estate of tenant by the entirety, then such filing does not sever joint tenants. As the Bankruptcy Court stated in *In re Ford:*

*The trustee merely obtains and retains custody of the debtor's undivided interest consisting of the same unities, intact and unaltered, as they existed immediately prior to the filing of the petition, until such time as that interest, still intact and unaltered, is exempted."* (Emphasis added.)

As pointed out in *Matter of Spain*, 55 B.R. 849 (Bkrtcy.N.D.AL 1985), unlike former Section 70(a) of the Bankruptcy Act, Section 541 of the Code does not specifically state that title of the bankruptcy is transferred to the trustee. Former Section 70(a) of the Bankruptcy Act provided:

Title to Property. a. The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located.

However, under the Bankruptcy Code the debtor does not transfer his title to property of the estate but holds his title subject to the exercise by the trustee of his rights to sell, use or lease such property by appropriation under the "avoidance" or "strong arm" sections as typified by Sections 542, 543, 544, 545, 546, and 547. The debtor retains the full use, possession and enjoyment jointly with the trustee and the right to refuse to turn over or deliver such property in proper cases. There is no voluntary or involuntary transfer of title to property upon filing. It may never take place at the option of the trustee and never occurs as to wholly exempt property. The trustee has no title to property of the estate until he elects to take affirmative action and proceedings are had or orders made.[1]

The cases of *In Re Lambert* and *In Re Panholzer* rely heavily on legislative history for their conclusion that the filing of the bankruptcy petition effects a severance of the joint tenancy with the right of survivorship. The *Lambert* court specifically found, as does this Court, that

---

**1.** The Court is aware that there is case law supporting the theory that the filing of the bankruptcy petition severs a joint tenancy with the right of survivorship. *In Re Lambert*, 34 B.R. 41 (Bkrtcy.D.Col.1983); *In Re Panholzer*, 36 B.R. 647 (Bkrtcy.D.MD 1984).

The next issue is whether the bankruptcy filing has the effect of severing the tenancy under state law. The characteristics of a joint tenancy are its four unities; namely the unity of interest, unity of title, unity of time and unity of possession. These must coincide, and if any are lacking, the estate cannot be one of joint tenancy. *Herring v. Carroll,* 300 S.E.2d 629 (W.Va. 1983). While it is recognized that a levy and a completed sale sever the joint tenancy, a judgment lien, without levy or execution on the judgment, does not sever a joint tenancy or prevent the interest of the judgment debtor from passing to or ripening in the surviving co-tenants, free of liens. 111 A.L.R. 171.

West Virginia has specific provisions for proceeding against personal and real property. West Virginia Code § 38–4–5 provides that:

> On a judgment for money, there may be issued an execution known as a writ of fieri facias.

W.Va.Code § 38–4–6 provides:

> By the writ of fieri facias, the officer shall be commanded to make the money therein mentioned out of the personal property of the person against whom the judgment is. The writ may be levied upon goods and chattels, current money and bank notes, stamps, certificates of stock in a corporation, negotiable warehouse receipts, negotiable instruments, or any other negotiable evidences of indebtedness calling for a liquidated sum of money, belonging to the person against whom the judgment is.

West Virginia Code § 38–4–8 provides: A writ of fieri facias or execution shall create a lien, from the time it is delivered to the sheriff or other officer to be executed, upon all of the personal property, or the estate or interest therein, owned by the judgment debtor at the time of such delivery of the writ, or which he may acquire on or before the return day thereof, although such property was not levied on or capable of being levied on under the provisions of section sic [§ 38–4–6] of this article... The lien created by this section shall be subject to the provisions of sections nine and ten [§§ 38–4–9, 38–4–10] of this article.

The lien created by the issuance of the writ of fieri facias does not deprive the owner of possession. The judgment creditor must levy upon the property. The levy is the setting aside of specific property from the general property of the judgment debtor and placing the same in the custody of law until it can be sold and applied to the payment of the execution. *Bent v. Weaver,* 106 W.Va. 164, 145 S.E. 594; *R.S. Corson Co. v. Hartman,* 144 W.Va. 790, 111 S.E.2d 346 (1959). If the personal property subject to levy is not levied on, the execution lien is not good against the purchaser of such property for value and without notice of the lien. *Huling, etc. Co. v. Cabell,* 9 W.Va. 522 (1876), 32 ALR 969N. However, if the fieri facias is docketed, the lien is good as against a purchaser. *Wiant v. Hays,* 38 W.Va. 681, 18 S.E. 807 (1893). If no levy is made or if the writ of fieri facias is not docketed, then the judgment debtor can pass good title to a bona fide purchaser. It is this Court's conclusion that if the judgment debtor can pass good title, then title has not passed.

Although the property at issue is personal property, recent West Virginia Supreme Court cases involving real estate support this Court's conclusion. Real estate cannot be levied on and sold under execution. *Maxwell v. Leeson,* 50 W.Va. 361, 40 S.E. 420 (1901). To create a lien on real estate the judgment lien creditor must docket the lien in the county where the real estate is located. West Virginia Code § 38–3–7. A judgment lien upon real estate may be en-

---

the Code does not provide explicitly for a transfer of title of the debtor's property to the trustee. *Lambert,* 34 B.R. at 43. Instead, the Code merely provides for the administration of property of the estate by the trustee. *Id.* Notwithstanding the aforesaid findings, the *Lambert* and *Panholzer* courts found that the filing of a Chapter 7 petition by a joint tenant was a conveyance that severed the joint tenancy with the right of survivorship and that the trustee and the former joint tenant(s) of the debtor become tenants in common. *Lambert,* 34 B.R. at 43; *Panholzer,* 36 B.R. at 651.

forced through West Virginia Code § 38–3–9 which provides as follows:

> The lien of judgment may be enforced in a court of equity after an execution or fieri facias thereon has been duly returned to the office of the court or to the justice [magistrate] from which it issued showing by the return thereon that no property could be found from which such execution could be made: provided, that such lien may be enforced in equity without such return when an execution or fieri facias has not issued within two years from the date of the judgment. If it appear to such court that the rents and profits of the real such lien may be enforced in equity without such return when an execution or fieri facias has not issued within two years from the date of the judgment. If it appear to such court that the rents and profits of the real estate subject to the lien will not satisfy the judgment in five years, the court may decree such real estate, or any part thereof, to be sold and the proceeds applied to the discharge of the judgment.

When a judgment lien creditor of a joint tenant executes his lien against the debtor's share of the property, the sale of the debtor's interest in the real estate on execution is sufficient to operate as a severance of the joint tenancy. The creditor and the remaining joint tenant hold the property as tenants in common. *Vincent v. Gustke*, 336 S.E.2d 33 (W.Va.1985). Subsequently, the purchaser at such sale could, by meeting the requirements of West Virginia Code *Who Entitled to Partition: Jurisdiction; State as Party Plaintiff* § 37–4–1 et seq., and showing the reasonableness of the sale, partition the property. *Harris v. Crowder*, 322 S.E.2d 854 (W.Va. 1984).[2]

Until such time as a judgment creditor has either obtained a levy upon the personal property or sold the property upon execution, the unities of joint tenancy exist and the interest of the joint tenant are at all time subject to and limited by the right of survivorship (which is a special incident of every joint tenancy). Upon the death of a joint tenant, there remains no interest or property right in the deceased.

An analysis of Bankruptcy Code § 544 *Trustee as lien creditor and as successor to certain creditors and purchasers* is illustrative here. It provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of

---

**2.** A quotation from Justice Neely in this case illustrates the continuing problem of joint tenancies:

> It is hardly productive here to recount the long and interesting history of tenancies by the entireties; however, let it suffice to point out that before the passage of the Married Women's Property Acts and other modern legislation giving social and economic equality to women, the tenancy by the entireties was a device that allowed the husband to manage and control all property owned jointly with his wife. Almost all of the attributes of the ancient tenancy by the entireties known to the common law have now been eliminated in the United States either by statute or by court decision. Indeed, it would appear that in all of the states that still recognize tenancies by the entireties, those tenancies are distinguished from joint tenancies by only one palpable characteristic: the right of survivorship either cannot be destroyed involuntarily by a creditor, or can be destroyed only with great difficulty. In other words, the archaic fiction of a tenancy by the entireties is preserved only because it makes it almost impossible for creditors to reach a debtor's family house. This is not, however, to say that creditors do not try with some regularity to do so, and occasionally even with some success.
>
> In many of the states that recognize tenancies by the entireties, when a husband's interest in the estate is sold at an execution sale, the purchaser takes subject to the wife's right of survivorship and, in some cases, the purchaser's only benefit is a right to share the house with the debtor's termagant wife, a dubious benefit at best. In some states courts allow such a purchaser to bring an action for partition, but the purchaser's resulting moiety is itself subject to survivorship in the nondebtor spouse. It all gets terribly complicated and the whole subject provides a field day for law school professors and law review editors. But, as is so often the case in the law, the point is that complication is what humane public policy has strived for: the more complicated the better! In the wake of complication come uncertainty and exorbitant legal fees that chill the exercise of creditors' rights against family homes!

the debtor or any obligation incurred by the debtor that is voidable by—...

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists ...

The trustee would not prevail when applying these principles to the case currently pending before this Court. The trustee's position was that of a creditor with an execution against the debtor that is returned unsatisfied. As we have seen, the execution, returned unsatisfied, does not break the unities of joint tenancy. In West Virginia the delivery of the writ of fieri facias or execution to the sheriff creates a lien against all personal property of the debtor. (West Virginia Code § 38–4–8.) This is the status given the trustee under § 544. He is a judgment creditor with an execution return *unsatisfied*. To break the unity of joint tenancy he must levy upon the personal property. (West Virginia Code § 38–4–6.) Bankruptcy Code § 544 does not provide that the trustee has the position of a judgment lien creditor who has levied upon the property. Under West Virginia Code § 38–4–9 through 11, the writ of fieri facias is not good as against a bona fide purchaser unless the writ has been actually levied upon the property, *and* the property is in the actual possession of the officer or some other person other than the debtor holding the property for the officer *or* the judgment creditor has docketed the execution.

Under Bankruptcy Codes § 542 and § 543 the trustee may demand that the debtor or any third party turnover the property. (If the debtor has exempted his interest in the joint tenancy, the trustee would abandon the property.) If the party refuses to deliver the property, the trustee may institute an action for turnover. There must be some affirmative action taken by the trustee to break the unities of time, title, interest and possession to destroy the joint tenancy. At the time of the death of Lila DeMarco, the trustee had not taken action to sever the joint tenancy with the right of survivorship. The four unities of joint tenancy still existed. Thus, upon the debtor's death, the funds representing the three certificates passed by the right of survivorship to the joint tenant, Charles D. Hall.

It is accordingly SO ORDERED.