In re Edgar and Beulah H. BALLARD, Debtors.

Jeffrey FAIRFIELD, Trustee, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee,

Commonwealth of Virginia, Appellee.

No. 94–2199.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1995.

Decided Sept. 20, 1995.

**ARGUED:** Jeffrey John Fairfield, Jeffrey J. Fairfield, P.C., Herndon, VA, for appellant. Patricia McDonald Bowman, Tax Division, United States Department of Justice, Washington, DC, for appellee. **ON BRIEF:** Loretta C. Agrett, Assistant Attorney General, Gary R. Allen, Gary D. Gray, Helen F. Fahey, United States Attorneys, Tax Division, United States Department of Justice, Washington, DC, for appellee.

Before HALL and WILLIAMS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Judge WILLIAMS wrote the majority opinion, in which Senior Judge PHILLIPS joined. Judge HALL wrote a dissenting opinion.

## OPINION

WILLIAMS, Circuit Judge:

In this appeal, we confront an admittedly arcane but interesting question of first impression in this circuit concerning the interaction between federal bankruptcy law and Virginia property law. More specifically, we consider the effect of the termination of the marital estate and resulting devolution of tenancy by the entireties property upon the death of a spouse following the commencement of the couple's joint bankruptcy case. Ruling on the motion of the United States for summary judgment, the bankruptcy court concluded that the proceeds derived from the sale of debtors' property, held by tenancy in the entireties, became the sole property of Edgar Ballard upon the death of his wife, Beulah Ballard. The court held that the proceeds from the sale of the Ballards' entireties property must be applied to pay the unsecured priority claims before a distribution may be made to unsecured general creditors regardless of the joint or individual character of the claim. Trustee, Jeffrey Fairfield, appeals the entry of summary judgment by the United States Bankruptcy Court and affirmance by the United States District Court for the Eastern District of Virginia. For the reasons discussed below, we affirm.

## I.

The parties do not dispute the underlying facts in this action. The debtors, Edgar and Beulah Ballard (the Ballards), filed a joint Chapter 11 petition on February 26, 1990. On the date of filing, the Ballards' principal asset consisted of residential real property located at 1841 Clachan Court, Vienna, Virginia. They owned this real property in fee simple as tenants by the entireties. On the List of Twenty Largest Creditors Holding Unsecured Claims, the Ballards included the following as undisputed, non-contingent debts: withholding taxes in the amount of $45,000 owed to the United States Internal Revenue Service and withholding taxes in the amount of $17,000 owed to the Commonwealth of Virginia, Department of Taxation.

On or about May 31, 1990, the IRS timely filed a proof of claim which was amended on February 13, 1992 when the IRS filed an amended proof of claim in the amount of $23,303.56, which consisted solely of a claim for a 100% penalty for the period ending December 31, 1989.[1]

1. The original proof of claim was in the amount of $29,975.65, listing two estimated claims in the amount of $2,236.00 for the debtors' federal income tax liability for the 1989 taxable year and in the amount of $27,739.65 for a 100% penalty for the period ending March 31, 1990. The sums

Upon conclusion of the investigation into the employment tax liabilities of Ballene Services, Inc.,[2] the IRS determined that both Edgar and Beulah Ballard were responsible persons who failed to collect and pay over federal employment taxes withheld from the wages of the employees of Ballene Services, and that both should be held liable for the $23,303.56 penalty, pursuant to 26 U.S.C. § 6672.

On December 28, 1990, the bankruptcy court entered an order authorizing the debtors to sell their residential real property. Also on that date, the court entered a separate order requiring that the proceeds derived from the sale of the Ballards' residential real property "be paid by the settlement attorney in the form of a check payable to Edgar Ballard, Beulah H. Ballard and [their attorney] James G. Smalley; [and] that the check ... be deposited in an interest bearing account requiring the signatures of the Debtors and their counsel to release the funds." (J.A. 49.) The Ballards sold their property, realizing approximately $43,000 from the sale.

On March 18, 1991, Leanne Njus and Associates, Inc. (Njus), an unsecured joint creditor represented by the later-appointed and now-current Trustee, Jeffrey Fairfield, objected to the proofs of claim filed by other claimants and moved to determine the extent of consolidation of the debtors' estates for disallowance of certain claims and for related relief. Specifically, Njus objected to the IRS proof of claim on the basis that Beulah Ballard "was not a responsible person [as defined in IRC § 6672(b)] required to collect, truthfully account for, and pay over trust fund payroll taxes." (J.A. 50.) Njus further requested that the court enter an order allocating "one-half of the net sales proceeds resulting from the sale of the debtors' residence to each of the respective estates of the joint petitioners;" directing "that the respective estates of the debtors be held separate and apart;" and disallowing "the proofs of

claim including the proof of claim filed by the United States." (J.A. 50–51.) Following a May 14, 1991, hearing, the bankruptcy court determined that Njus lacked standing to contest the tax claims of the United States and the Commonwealth of Virginia and dismissed Njus's motion with prejudice.

Beulah Ballard died after the May 14, 1991, hearing but before the bankruptcy case was converted to a Chapter 7 proceeding. Thereafter, by order entered April 6, 1993, Mr. Fairfield was confirmed as Chapter 7 trustee. On or about July 27, 1993, the Trustee, in his new capacity, renewed the motions and objections he had presented to the court on behalf of the Njus creditors in March of 1991. The United States, in turn, moved for summary judgment requesting dismissal of the Trustee's motion to segregate the debtors' estates and to overrule the Trustee's objection to the IRS's proof of claim. The United States argued that in light of Mrs. Ballard's death, whether she was personally liable for the § 6672 penalty was a moot question.

In its entry of oral findings from the bench, the bankruptcy court granted summary judgment to the United States, finding that upon Mrs. Ballard's death, Mr. Ballard's estate acquired the entire amount of the proceeds from the sale of their home, based on the Ballards' tenancy by the entireties interest in the proceeds. Thus, the court reasoned, whether Mrs. Ballard was also liable for the IRS tax claim was moot because, after her death, all the proceeds from the sale must be allocated to Mr. Ballard's estate. In its brief written order granting summary judgment to the United States, the bankruptcy court stated:

> ... the proceeds derived from the sale of the debtors' tenants by the entireties property was held by the debtors as tenants by the entireties, that such proceeds became the sole property of Edgar Ballard upon the death of Beulah Ballard, that such

---

claimed on the original and amended proofs of claim relate to unpaid federal withholding taxes withheld from the wages of the employees of Ballene Services, Inc. during the fourth quarter of 1988 and the second, third, and fourth quarters of 1989.

**2.** The Ballards were the sole stockholders in Ballene Services, Inc.

proceeds must first be applied to pay the unsecured priority claims before a distribution may be made to unsecured general creditors regardless of whether such creditors hold joint or non-joint claims and that the United States of America's motion for summary judgment should be granted. (J.A. 15–16.) The Trustee appealed and the district court, in an oral ruling from the bench, affirmed the judgment of the bankruptcy court. The Trustee now appeals, articulating two arguments in support of reversal: (1) only joint creditors are entitled to distribution from the bankruptcy estates; and (2) that the sale of the Ballards' house under § 363 of the Bankruptcy Code terminated their tenancy by the entireties and mandated an allocation of the sale proceeds between the two bankruptcy estates.

## II.

We review *de novo* the bankruptcy court's grant of summary judgment and the district court's affirmance thereof. *Savers Fed. Sav. & Loan Ass'n v. McCarthy Constr. Co. (In re Knightsbridge Dev. Co.)*, 884 F.2d 145, 147 n.3 (4th Cir.1989).

## A.

The Trustee's first contention need not detain us long. In support of his claim, the Trustee asserts that the sale of the Ballards' house under § 363 of the Bankruptcy Code terminated their tenancy by the entireties and mandates an allocation of the sale proceeds between the two bankruptcy estates.[3] The record reflects that upon authorization of the bankruptcy court, the Ballards sold the property which they held as tenants by the entireties. The $43,000 proceeds from the sale were placed in an interest bearing account requiring the signatures of the Ballards and their counsel to release the funds.

▬ Like the bankruptcy court, we discern no intent by Mr. and Mrs. Ballard to terminate their tenancy by the entireties upon the sale of their home. Again, looking to Virginia law, absent "an agreement or understanding to the contrary, the proceeds derived from a voluntary sale of real estate held by the entireties are likewise held by the entireties." *Oliver v. Givens*, 204 Va. 123, 129 S.E.2d 661, 663 (1963). The Trustee cannot point to any evidence in the record of this appeal which reflects an intent by the Ballards to sever their entireties interest in the proceeds from the sale of their home. Indeed, the manner in which the proceeds were paid and retained by order of the bankruptcy court preserved the tenancy by the entireties. Given the absence of any agreement or other indicia of the Ballards' intent to sever the entireties tenancy upon the sale of the real estate, we affirm the determination of the bankruptcy court that the entireties interest continued in the proceeds.

## B.

The Trustee next contends that the bankruptcy court erred in concluding as a matter of law that the proceeds from the sale of the Ballards' residence, held as tenants by the entireties, became the sole property of Edgar Ballard's bankruptcy estate upon the death of Beulah Ballard, thus placing such proceeds within the reach of the IRS to satisfy a priority tax claim against Mr. Ballard. Specifically, the Trustee contends that because only joint creditors are entitled to distribution from the bankruptcy estates, the bankruptcy court's refusal to entertain his objection to the tax claim against Beulah Ballard must be reversed even if the tenancy by the entireties in the sale proceeds of the Ballards' residence endured until the death of Mrs. Ballard.

The United States, however, contends that the bankruptcy court properly concluded that the Trustee's arguments are foreclosed by the death of Beulah Ballard and the resulting devolution by operation of Virginia property law of the entireties property in fee simple to her husband, Mr. Ballard, and consequently to his bankruptcy estate. Thus, whether the

---

**3.** Section 363 defines the rights and powers of the trustee with respect to the disposition of the property of the estate. It also articulates the rights of third parties asserting an interest in the subject property. 11 U.S.C.A. § 363 (West Supp. 1995). *See 2 Collier on Bankruptcy* ¶ 363.01, at 363–6 (15th ed.1995). The Ballards as Chapter 11 debtors-in-possession held the powers and duties of the Trustee. 11 U.S.C. § 1107(a) (1988).

IRS is a joint creditor or merely a creditor of Mr. Ballard is irrelevant for the purpose of determining the priority of the various creditors. For the following reasons we agree with the conclusions of the bankruptcy court and, therefore, affirm.

■ The Bankruptcy Code broadly defines the property interests included in the bankruptcy estate to comprise "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C.A. § 541(a)(1) (West Supp.1995), and, in pertinent part, "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C.A. § 541(a)(7) (West Supp.1995). This general rule of inclusion applies with equal force to the debtor's interest in entireties property, *Chippenham Hosp., Inc. v. Bondurant (In re Bondurant)*, 716 F.2d 1057, 1058 (4th Cir.1983); *Napotnik v. Equibank and Parkvale Sav. Assoc.*, 679 F.2d 316, 318 (3d Cir.1982) (construing § 541 to include the debtor's interest in entireties property), although state law determines the particular features of this property interest. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

■ It is undisputed that at the time of the Ballards' joint filing for bankruptcy, they owned their home as tenants by the entireties, a form of concurrent ownership of property recognized by the Commonwealth of Virginia. *Pitts v. United States*, 242 Va. 254, 408 S.E.2d 901, 903 (1991); *First & Merchants Nat'l Bank v. Richmond Lumber & Bldg. Supply Co. (In re Norris)*, 5 B.R. 799, 802 (E.D.Va.1980); *Vasilion v. Vasilion*, 192 Va. 735, 66 S.E.2d 599, 602 (1951). Tenancy by the entireties comprises "four essential characteristics, that is, unity of time, unity of title, unity of interest, and unity of possession." *Pitts*, 408 S.E.2d at 903. In particular, neither spouse can effectuate a severance of the tenancy by his or her sole act either by conveying or disposing of any part of the property. *Id.; Vasilion*, 66 S.E.2d at 602. This restriction on alienation stems from the common-law recognition of the husband and wife as a "juristic person separate and distinct from the spouses themselves." *Pitts*, 408 S.E.2d at 903 (citation and quotation marks omitted).

■ The Trustee argues that the anti-alienation feature of entireties property requires that the proceeds from the sale of the Ballards' residence be applied exclusively to payment of joint creditors. He relies upon the general rule that entireties property under Virginia law is available for bankruptcy administration solely for the benefit of joint creditors. *Sumy v. Schlossberg*, 777 F.2d 921, 925 (4th Cir.1985) (characterizing Maryland entireties property as an asset of debtors' joint bankruptcy estates and permitting liquidation only for the benefit of joint creditors); *Ragsdale v. Genesco, Inc.*, 674 F.2d 277, 279 (4th Cir.1982) (applying the same principle to Virginia entireties property); *Virginia Nat'l Bank v. Martin (In re Martin)*, 20 B.R. 374, 376 (Bankr.E.D.Va.1982) (same); *Reid v. Richardson*, 304 F.2d 351 (4th Cir.1962) (same). In this appeal, however, we confront a distinguishing factual development—the death of Mrs. Ballard following the joint filing of bankruptcy—which implicates another equally important attribute of entireties property, the right of survivorship vested in the remaining spouse: [4]

> Upon the death of either spouse the whole of the estate by the entireties remains in the survivor. This is so not because he or she is vested with any new interest therein, but because in the first instance he or she took the entirety which, under the common law, was to remain to the survivor.

*Vasilion*, 66 S.E.2d at 602 (citing *Lang v. Commissioner*, 289 U.S. 109, 111, 53 S.Ct. 534, 535, 77 L.Ed. 1066 (1933)). Of course, we recognize that the unique character of entireties property is such that the death of one spouse does not vest the other with interests he or she did not already hold. The termination of coverture does, however, extinguish the "separate and distinct" juristic personality that underlies those restrictions

---

**4.** Until the moment of Mrs. Ballard's death, the Trustee would have been correct in his assertion. The Trustee, however, in his select focus on the anti-alienation provision, has ignored an equally important feature of tenancy by the entirety: the right of survivorship enjoyed by the spouse of the deceased.

on alienation unique to entireties property. Thus, Mrs. Ballard's death released her surviving spouse, and thus, his bankruptcy estate, from all conditions of the tenancy conceived to preserve unity of entireties property. *See Dollinger v. Bottom (In re Bottom)*, 176 B.R. 950, 953 (Bankr.N.D.Fla.1994) ("[t]here is no question that the debtor's right of survivorship is part of the estate"); *Waldschmidt v. Shaw (In re Shaw)*, 5 B.R. 107, 109–10 (Bankr.M.D.Tenn.1980) (same). More simply put, when the dust settles, by operation of law, Mr. Ballard's bankruptcy estate holds a fee simple interest in the proceeds of the sale of their home.

 Although no doubt disappointing to the Trustee and the joint creditors of the bankruptcy estate, it should come as no surprise that upon the destruction of the tenancy by the entireties, in this case by the death of Mrs. Ballard, their status as joint creditors would accord them no greater priority than that enjoyed by any non-joint creditor. Indeed, had Mrs. Ballard died prior to the bankruptcy filing, the joint creditors would fully expect to be in the same position they find themselves today. This result is not dictated by any provision of bankruptcy law but rather by the unique character of property held in tenancy by the entireties. We agree with the Trustee's contention that the commencement of a joint bankruptcy case does not disrupt a debtor's co-ownership of property as a tenant by the entireties. The Trustee, however, must accept all those features peculiar to this form of concurrent property ownership, those that inure to the benefit of joint creditors, such as preferred status during coverture, but also rights of survivorship that upon the death of a spouse collapse any meaningful distinction between joint and non-joint creditors. On this basis,

therefore, we agree with the district court and affirm the decision of the bankruptcy court.

### III.

In summary, we conclude that the bankruptcy court did not err in its determination that the proceeds derived from the sale of the Ballards' property held by tenancy in the entireties became the sole property of Edgar Ballard upon the death of his wife, Beulah Ballard. Thus, the funds must be applied first to pay the unsecured priority claims regardless of the joint or individual character of the claim.

*AFFIRMED.*

K.K. HALL, Circuit Judge, dissenting:

I dissent because I believe that the sale of the property had the effect of severing the tenancy by the entireties, and, as a result, each bankruptcy estate should be deemed to contain half of the proceeds. It is therefore necessary to determine whether Mrs. Ballard was liable on the tax claims; if she was not, the tax creditors would be limited to the proceeds in her husband's estate.

At filing, all property of the debtors came into their respective estates. 11 U.S.C. § 541(a)(1). Filing alone did not sever the tenancy by the entireties. *See In re DeMarco*, 114 B.R. 121, 123 (Bankr.N.D.W.Va.1990). However, the debtors-in-possession, who act as trustees,[1] are charged with administering the estate, and the sale of the house severed the tenancy by the entireties. *See id.* at 124 ("The trustee has no title to property of the estate until he elects to take affirmative action and proceedings are had or orders made."). In the absence of an exemption that might dictate a different result,[2] the

---

1. A trustee was not appointed until after the cases were converted to chapter 7.

2. With regard to the residence, the only exemption claimed was the state homestead exemption; the debtors did not claim the exemption under 11 U.S.C. § 522(b)(2)(B). The majority notes that had Mrs. Ballard not died, liquidation of the entireties estate would have been for the benefit of the joint creditors only. *See* majority op. at 371 & n.4. The majority seems to assume that this result would obtain even without a § 522(b)(2)(B) exemption having been claimed.

Only when the exemption option has been exercised, however, does the entireties property stand available for the satisfaction of *only* the joint debts. *See Sumy v. Schlossberg*, 777 F.2d 921, 927–29 (4th Cir.1985); *In re Ford*, 3 B.R. 559, 570 (Bankr.D.Md.1980) ("The trustee merely obtains and retains custody of the debtor's undivided interest consisting of the same unities, intact and unaltered, as they existed immediately prior to the filing of the petition, until such time as that interest, still intact and unaltered, is exempted from the estate under § 522(b)(2)(B)."), aff'd.

money is simply allocable between the two estates.

I would agree that, had the sale occurred outside bankruptcy, there is support in Virginia law for finding a new tenancy by the entireties in the proceeds. *See Oliver v. Givens*, 204 Va. 123, 129 S.E.2d 661, 663 (1963) ("It is true . . . that the sale of the real estate which the husband and wife owned as tenants by the entireties terminated such an estate in that property. . . . [I]n the absence of an agreement or understanding to the contrary, the proceeds derived from a voluntary sale of real estate held by the entireties are likewise held by the entireties."). However, the sale of the Ballards' residence was not a "voluntary sale" by a husband and wife. Instead, it was a liquidation of bankruptcy estate assets by debtors-in-possession, undertaken with the "agreement or understanding" that creditors would eventually consume the entire amount. By focusing on how state law would view the transaction, the majority loses sight of the bankruptcy context in which the sale took place.

"[A] debtor in possession shall have all the rights, . . . and shall perform all the functions and duties . . . of a trustee serving in a case under [chapter 11]." 11 U.S.C. § 1107(a). One of a trustee's duties is to "collect and reduce to money the property of the estate. . . ." 11 U.S.C. § 704(1). The bankruptcy court ruled that the sale of the Ballards' residence was authorized under 11 U.S.C. § 363(b)(1), which provides that "[t]he trustee, after notice and hearing, may . . . sell . . . property of the estate. . . ."[3] The debtors-in-possession gave notice of the proposed sale pursuant to Bankr.R. 6004, which is required for the sale of estate property by a trustee or debtor-in-possession. The debtors' initial reorganization plan, filed after the sale, stated that the plan was one "of liquidation." The net proceeds, which were earmarked in the plan for payment to their creditors, constitute property of the estate that was being temporarily held by them in their role as debtors-in-possession.

The pivotal fact underlying the bankruptcy court's ruling that the tenancy by the entireties survived the sale of the residence was that "the proceeds were deposited into an interest-bearing account requiring the signature of both parties and their attorney." J.A. 25 (bench ruling on IRS's summary judgment motion). The majority likewise holds that "the manner in which the proceeds from the sale were paid and retained by order of the bankruptcy court preserved the tenancy by the entireties." Majority op. at 370. I believe this logic elevates form over substance.

A trustee "may make such deposit or investment of the money of the estate . . . as will yield the maximum reasonable net return on such money. . . ." 11 U.S.C. § 345. Debtors-in-possession, in the performance of their administrative duties, may do the same. Had the proceeds been placed in separate accounts, would the majority's analysis be different? Inasmuch as the debtors had not identified any individual debts of either of them, it simply made sense to require that the proceeds be kept in a single account. This mere administrative detail should not be permitted to eclipse the substance of the sale.

I would vacate the judgment below and remand with directions to determine whether Mrs. Ballard was liable on the tax claims.

---

*Greenblatt v. Ford*, 638 F.2d 14 (4th Cir.1981). In each of the cases cited by the majority—*Sumy, Ragsdale, Martin* and *Reid* (*see* majority op. at 371)—the debtor(s) had in fact claimed the exemption.

Even if only Mr. Ballard is liable for the tax claims, the IRS and other individual creditors would still be able to reach *his* portion of the sale proceeds. This result, however, is dictated by his failure to claim the § 522(b)(2)(B) exemption and not, as the majority holds, by a dissolution of the tenancy by the entireties occasioned by Mrs. Ballard's death.

**3.** Whether the sale was conducted pursuant to § 363(b)(1) or (h) is irrelevant. Inasmuch as both co-tenant spouses had filed for bankruptcy, there was no need to invoke § 363(h) to consider the benefits of partition in kind or sale of one debtor's undivided interest. Subsection (h) was clearly written with non-debtor co-owners in mind.