In re Patricia A. McCULLEN, Debtor.

**Keith L. Phillips, Chapter 7 Trustee,**

v.

**Patricia A. McCullen, Debtor.**

**Bankruptcy No. 99–32007–S.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Sept. 28, 1999.

and Consulting Agreement of May 20, 1998, involving the Airport Site formality.

Keith L. Phillips, Phillips & Fleckenstein, P.C., Richmond, VA, Chapter 7 Trustee.

James F. Kelley, Attorney at Law, P.C., Fredericksburg, VA, for the Debtor.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This Contested Matter comes before the Court on the Objection of Keith L. Phil-

lips, Chapter 7 Trustee (the "Trustee"), to the Claimed Exemptions (the "Objection") filed by Patricia A. McCullen (the "Debtor"). The exemption at issue is proceeds from the sale of real property held as tenants by the entireties. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) (1994); venue is proper under 28 U.S.C. § 1409 (1994). Upon consideration of the parties' pleadings, and after a hearing held on this matter on July 28, 1999, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### I. Relevant Dates

The Debtor filed a Chapter 7 petition with the Court on March 19, 1999. Along with the petition, the Debtor filed the required Schedule C which lists the Debtor's exemptions. On May 3, 1999, the Debtor filed an amended Schedule C which lists the exemption at issue here. Citing Bankruptcy Code (the "Code") § 522(b)(2)(B), the Debtor claims as exempt tenants by the entireties funds from the sale of tenants by the entireties property. The value of this exemption is listed in the amount of $20,868.84. The Trustee, pursuant to Bankruptcy Rule 4003, filed his timely Objection to the tenants by the · entireties exemption on June 11, 1999. This Objection is timely because it was filed within thirty days after the Code § 341 meeting of creditors concluded on June 11, 1999.

### II. Property in Spotsylvania County

In April of 1987, the Debtor and her husband (the "McCullens") purchased a parcel of real property in Spotsylvania County, Virginia (the "Property"). The McCullens purchased the Property as tenants by the entireties and owned the Property in this capacity until it was sold. Although the McCullens never divorced, they have been both separated and together from time to time since their marriage in 1967. The Debtor testified that the McCullens are together now but were separated at the time when the petition was filed. The McCullens executed a property settlement agreement in March of 1990 which provides that each of the McCullens shall be solely responsible for his or her respective debts incurred starting from the date of the agreement.

In early 1999, the McCullens decided to sell the Property, and on March 11, 1999, the McCullens and the purchasers of the Property signed a Department of Housing and Urban Development settlement statement. According to the settlement statement, after paying off a first mortgage and a judgment obtained by Mary Washington Hospital, the McCullens were to receive $51,299.68 from the purchasers. It is not clear when the McCullens received this money because the purchasers apparently had some problems getting their financing in order. The Debtor testified that the money was received at some point prior to May of 1999, while the Debtor's husband testified that the money was received a week following the execution of the settlement statement on March 11, 1999. It is clear, however, that the proceeds from the settlement were distributed in the form of two checks, with one being made out to the Debtor and the other being made out to the Debtor's husband. Both of the McCullens testified that it was their understanding to split the proceeds from the sale of the Property; the Debtor could do what she wanted with her half, and the Debtor's husband could do what he wanted with his half. It was the McCullens' understanding that the Debtor's half of the proceeds was hers, that the Debtor's husband's half of the proceeds was his, and that neither had control over the other's money.

Following the distribution of the settlement proceeds, the Debtor's husband spent his half of the proceeds paying bills and settling debts which he had personally incurred. The Debtor, because of her drinking problem and propensity to bounce checks, gave her half of the proceeds to her stepdaughter, who deposited the funds in her personal savings account. Upon the

Debtor's request, her stepdaughter returned $5,000 of the money she was keeping in her account. The Debtor used this portion of her half of the proceeds to settle secured debt, priority debt, and unsecured debt that she had personally incurred. The remaining funds were eventually placed in the Debtor's attorney's trust account. In one instance, the Debtor's husband lent the Debtor money out of his half of the proceeds so that the Debtor could pay a $921.16 car repair bill. The Debtor reimbursed her husband for this loan.

### III. Findings Made in Open Court

At the conclusion of the hearing on this matter, the Court announced several findings of fact from the bench. The Court found that the sale of the Property concluded on March 11, 1999, which was prior to the date of the Debtor's petition. The Court also found that the fact that the proceeds from the sale of the Property were received sometime after the settlement is of no import because the intent of the parties as to the disposition of the proceeds was known prior to the receipt of the funds. The Court found that the proceeds from the sale were not available to the McCullens immediately upon closing but that the Debtor's husband's testimony puts delivery of the checks about a week after settlement. The Court found that the McCullens requested the proceeds from the sale be split half-and-half.

### CONCLUSIONS OF LAW

### I. Tenants by the Entireties Exemption in Code § 522(b)(2)(B)

#### A. Entireties Exemption in Virginia

■ Code § 522(b)(2)(B) provides that an individual debtor may exempt "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(2)(B). In Virginia, it is clear that if property is held as

tenants by the entireties, such property is exempt from the claims of non-joint creditors. *See Vasilion v. Vasilion,* 192 Va. 735, 740, 66 S.E.2d 599, 602 (1951); *see also In re Zella,* 196 B.R. 752, 754 (Bankr. E.D.Va.1996). The Trustee may, however, sell the interest of the debtor and the debtor's spouse in tenancy by the entireties property for the benefit of their joint creditors. *See Sumy v. Schlossberg,* 777 F.2d 921, 924 (4th Cir.1985).

#### B. Exemption Extends to Proceeds from Sale of Entireties Property

■ It is also clear in Virginia that the entireties exemption covers not only the entireties property itself, but also the proceeds from the sale of the entireties property. *See Zella,* 196 B.R. at 754; *see also Sprouse v. Griffin,* 250 Va. 46, 51, 458 S.E.2d 770, 773 (1995). Under Virginia law, the proceeds derived from a voluntary sale of real estate held by the entireties may also be held by the entireties. *See In re Ballard,* 65 F.3d 367, 370 (4th Cir.1995); *see also Oliver v. Givens,* 204 Va. 123, 127, 129 S.E.2d 661, 663 (1963).

In the case at bar, there is no question that the McCullens owned the Property as tenants by the entireties prior to the sale of the Property on March 11, 1999. If the proceeds from the sale of the Property retained their entireties character, then such proceeds would only be available to pay the claims of joint creditors of the McCullens and would be exempt from the claims of non-joint creditors. If, on the other hand, the proceeds from the sale of the Property lost their entireties character, then such proceeds would be available to pay the claims of both joint and non-joint creditors.

### II. The McCullens Terminated the Entireties Tenancy

#### A. How an Entireties Tenancy is Terminated

■ In a tenancy by the entirety, the incidents of time, title, possession, and interest must unite. *See Pitts v. United States,* 242 Va. 254, 258, 408 S.E.2d 901,

903 (1991); *see also Sundin v. Klein*, 221 Va. 232, 239, 269 S.E.2d 787, 791 (1980). Implicit in the terms under which the entirety estate originates is the proposition that the estate can be terminated only by the joint voluntary action of both tenants or the death of one as the result of a cause reasonably contemplated at the time when the tenancy is created. *Id.; see also Rockingham Mut. Ins. Co. v. Hummel*, 219 Va. 803, 806, 250 S.E.2d 774, 776 (1979) (holding that neither spouse can sever the entirety estate by his or her sole act). In Virginia, an entireties estate cannot be severed by either spouse by his or her sole act, and neither spouse may convey or dispose of any part of such estate to effect such a severance. *See Johnson v. McCarty*, 202 Va. 49, 55, 115 S.E.2d 915, 920 (1960). While a joint sale of real estate held in a tenancy by the entireties terminates the estate in the real property, the proceeds will also be held by the entireties absent an agreement to the contrary. *See Oliver*, 204 Va. at 126–27, 129 S.E.2d at 663. If there is an agreement or an understanding between the parties to sever the entireties tenancy upon the sale of the real property, then under Virginia law the proceeds from the sale will not be held by the entireties. *See Ballard*, 65 F.3d at 370; *see also Sprouse*, 250 Va. at 51, 458 S.E.2d at 773. The Court must determine if there is any agreement or other indicia of the parties' intent to sever the entireties tenancy upon the sale of the real estate. *See Ballard*, 65 F.3d at 370. The Court, therefore, will look to see if there is any indication of an intent on the part of the McCullens to change the character of the proceeds derived from the sale of the Property. *See Sprouse*, 250 Va. at 51, 458 S.E.2d at 773.

## B. Evidence of the McCullens' Understanding and Intent

It is clear from the evidence that the McCullens had an agreement and an understanding that the proceeds from the sale of the Property would be divided equally between them. Both the Debtor and her husband testified that it was their understanding that the Debtor's husband could take his half of the proceeds and do what he wanted with it, and that the Debtor could take her half of the proceeds and do what she wanted with it. According to their testimony, the McCullens agreed to split the proceeds from the sale of the Property and it was their understanding that the Debtor's husband's half of the proceeds was his and the Debtor's half of the proceeds was hers. Thus, the McCullens had an agreement and an understanding to sever the entireties tenancy upon the sale of the Property and to change the nature of the proceeds into non-entireties property.

The evidence also reveals several indicia of the McCullens' intent to sever the entireties tenancy upon the sale of the Property. First, the proceeds from the settlement of the sale of the Property were distributed to the McCullens in the form of two checks, with one being payable to the Debtor and the other being payable to the Debtor's husband. Second, the Debtor's husband spent his half of the proceeds paying his own debts, while the Debtor gave her half of the proceeds to her stepdaughter for safekeeping. The Debtor spent some of her half of the proceeds settling her own debts, and the rest of her half ended up in her attorney's trust account. Clearly, non-joint creditors of the Debtor or of her husband could reach the proceeds of the sale. Finally, the property settlement agreement that the McCullens executed provides that the Debtor and her husband are individually responsible for their respective debts, and neither has any interest in the property of the other.[1] Even though the McCullens never official-

---

1. The Court does not find that the McCullens terminated the tenancy by the entireties at the time they executed the property settlement agreement. However, the agreement does state that both the Debtor and her husband relinquish "all right, title, and interest" which

ly divorced, the agreement is indicative of their intent to keep their affairs separate and to deal with third parties not as husband and wife but as separate individuals. In keeping with this scheme, both the Debtor and her husband, acting independently, allowed their non-joint creditors to satisfy their claims out of the proceeds from the sale of the Property. From all of the foregoing evidence, the Court infers intent on the part of the McCullens to terminate the entireties tenancy and to treat the proceeds from the sale of the Property as non-entireties property.

### C. Court's Conclusion Follows the *Oliver v. Givens* Holding

The Debtor relies heavily on the case of *Oliver v. Givens,* 204 Va. 123, 129 S.E.2d 661 (1963). In *Oliver,* a husband and wife owned real property as tenants by the entireties, and when they sold this property, the proceeds from the sale were delivered to the wife. *Id.* at 124, 129 S.E.2d at 662. The wife deposited the proceeds to her credit in a local bank, and then used part of the proceeds to purchase three acres of land which were deeded to her only. *Id.* The husband filed for bankruptcy protection, and the bankruptcy trustee brought a suit against the wife to recover for the estate the husband's half of the proceeds from the sale of the entireties property. The trustee argued that the net proceeds of the sale of the entireties property were owned by the husband and wife as tenants in common with the result that the husband's one-half interest was subject to his debts and became an asset for the bankruptcy estate. *Id.* The court disagreed with the trustee and held that the proceeds of the sale of the entireties property were likewise owned and held by the husband and wife as tenants by the entireties. *Id.* at 127, 129 S.E.2d at 663. That

each has or ever will have in the property of the other. (Def.'s Ex. 3 ¶ 14,15.) Furthermore, the agreement states that the wife shall own free and clear of any claim by the husband amounts deposited in bank accounts listed in her own name. (Def.'s Ex. 3 ¶ 6.)

being so, the court held that the husband's interest was free and immune from the claims of his sole creditors. *Id.*

In relying on this case, the Debtor points to the court's holding that the proceeds from the sale retained their entireties character even though the proceeds went directly to the wife and even though the wife used the proceeds to purchase land deeded solely to her. The Debtor argues that this holding is controlling and relevant here under the following reasoning: if proceeds from the sale of entireties property retain their entireties character even if they only go to one of the parties and even if they are used to buy property for only one of the parties, then the fact that the McCullens split the proceeds from the sale of the Property does not translate into a finding that the tenancy was terminated upon the sale.

The Debtor's argument misses the mark because the facts of *Oliver* are distinguishable from the facts of the case at bar. The complete holding of *Oliver* is that in the absence of an agreement or understanding to the contrary, the proceeds derived from a voluntary sale of real estate held by the entireties are likewise held by the entireties. *Id.* at 126–27, 129 S.E.2d at 663. There was no evidence of an agreement or understanding to the contrary in *Oliver,* and absent such an agreement or understanding, the court properly held that the proceeds retained their entireties character. The facts that the proceeds only went to the wife and that the wife used the proceeds to buy land deeded only to her did not evidence an agreement or understanding to sever the entireties tenancy. In the case at bar, there is evidence of an agreement or understanding to the contrary. The McCullens both testified that they agreed to split the proceeds from the

While not dispositive of the issue, this language does influence the Court's holding that it was the McCullens' intent and understanding not to hold the proceeds from the sale of the Property in a tenancy by the entireties.

sale of the Property and that they agreed that each other's half was his or her own to do whatever he or she wished with it. In conformity with *Oliver*, the Court will find that such an agreement terminated the entireties tenancy.

### CONCLUSION

An entireties tenancy can only be terminated by the joint act of both the husband and wife. Although a deed executed by both husband and wife is necessary to transfer an interest in real property held in a tenancy by the entireties, something less than a formal document is necessary to terminate that same interest in the proceeds. The McCullens' intentions prior to, and their actions following, the sale of the Property indicate that there was an agreement to sever their joint interest in the proceeds. For, as the court in *Oliver* held, a tenancy by the entireties in real property continues in the proceeds from the sale of that property, unless there is some agreement or understanding to the contrary. *Id.* The Court finds evidence of such an agreement and understanding here.

The Court concludes that, pursuant to Bankruptcy Rule 4003(c), the Trustee as the objecting party has carried his burden of proving that the Debtor's entireties exemption was not properly claimed. *See* Fed. R. Bankr.P. 4003(c). The Court, therefore, will sustain the Trustee's Objection and will disallow the Debtor's entireties exemption, thus making the funds claimed in the exemption available to the Trustee for distribution to both joint and non-joint creditors. An appropriate Order will be entered simultaneously herewith in conformity with this Memorandum Opinion.