**In re Terri M. NAGEL, Debtor.**

**No. 02–83832–RGM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Aug. 8, 2003.

Nancy Olszewski Ryan, Robert R. Weed, Law Offices of Robert Weed, Alexandria, VA, for Debtor.

Heather Dawn Dawson,· James W. Reynolds, Odin, Feldman & Pittleman PC, Fairfax, VA, for trustee.

### MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

The question presented by the trustee's motion for summary judgment on his objection to the debtor's claim of exemption in this chapter 7 case asks when a tenancy by the entirety estate in the proceeds from the sale of real property which was held by the debtor and her non-filing estranged

spouse as tenants by the entirety with the common-law right of survivorship terminates.

The facts are not in dispute. Terri M. Nagel, the debtor, and Edward C. Nagel, her non-filing spouse, were married on April 15, 2000. On March 8, 2001, they purchased a home which was titled in their joint names "as tenants by the entirety with the full common law right of survivorship." They separated in early March 2002 and the debtor immediately filed a bill of complaint for divorce. They sold the home and went to settlement on June 22, 2002. The net proceeds from the sale were $43,370.71, but they could not agree on how to split the proceeds between them. The settlement attorney, Daniel H. Borinsky, offered to hold the net proceeds in escrow until they resolved the matter. He explained to them that he was required to furnish a taxpayer identification number for the escrow account. In the case of individuals this is the individual's social security number. He further explained that at the end of the year, the bank would issue a Form 1099 to the Internal Revenue Service stating the amount of interest earned and presumptively reportable on the that individual's federal and state income tax return. The Form 1099 issued will reflect only the social security number of the first named account holder. In order to prevent all the interest from being reported to only one of the two spouses, he suggested that he open two interest-bearing accounts equal in amount, one with each individual's social security number. In this way, one-half of the interest earned would be reported to each spouse. He agreed that he would not disburse any of the money in escrow except upon the agreement of both the parties or a court

order. All agreed to this procedure and he opened the two accounts. The names of the accounts were "Edward C. Nagel Trust, Daniel H. Borinsky Trustee" and "Terri L. Nagel Trust, Daniel H. Borinsky, Trustee."

The debtor filed a petition in bankruptcy under chapter 7 on August 2, 2002. She and her estranged husband had not agreed upon the division of the escrow which was still being held by the settlement attorney. The divorce proceeding was still pending. She listed her interest in the escrow fund on Schedule A, Real Property, describing it as:

> Proceeds of sale of marital home, held in escrow by Dan Barinski, *[sic]* settlement $44,000.00 522(b)(2)(B) divided between husband and wife (2 CDs) with attorney name on both and debtor on one for 22,000.00 and husband on one for 22,000

She claimed it exempt on Schedule C as tenants by the entirety property.[1]

The trustee objected to the claim of exemption asserting that the tenancy by the entirety estate had been severed before the filing of the petition. The debtor argues that it was not. She and her husband testified at their depositions that they intended to split the proceeds from the sale of the house but never came to an agreement on how to split the proceeds. The debtor wanted 60% of the proceeds. Her husband wanted all of the proceeds. There were some discussions between the parties' attorneys but the matter was never resolved. The parties recently reconciled. The divorce suit was dismissed on June 24, 2003.

### Discussion

■ Virginia law establishes that while the sale of real property owned by a hus-

---

1. On July 15, 2003, shortly before the hearing on the objection, the debtor amended Schedules A and C to increase the value of the escrow fund from $22,000 to $44,000. The description was not otherwise altered.

band and wife as tenants by the entirety terminates the entireties estate in the real property, "in the absence of an agreement or understanding to the contrary, the proceeds derived from a voluntary sale of real estate held by the entireties are likewise held by the entireties." *Oliver v. Givens,* 204 Va. 123, 126–27,129 S.E.2d 661, 663 (1963). *See also Pitts v. United States,* 242 Va. 254, 261, 408 S.E.2d 901, 905 (1991). *Oliver* is particularly instructive. Willis Lee Oliver and Betty H. Oliver, husband and wife, owned real property as tenants by the entirety with the common-law right of survivorship. They sold the property and the entire proceeds were paid to Betty. Within twelve months, Willis filed a voluntary petition in bankruptcy. The bankruptcy trustee, Charles W. Givens, Jr., filed a motion for judgment in the state court seeking to recover one-half of the proceeds from Betty as a fraudulent transfer. The trial court held that the sale of the real estate terminated the tenancy by the entirety; that the Olivers became tenants in common as to the proceeds; and that the bankruptcy trustee could recover Willis' half of the proceeds from Betty. *Id.,* 204 Va. at 123–24, 129 S.E.2d at 661–62. The Virginia Supreme Court reversed. It held that the entireties estate continued in the proceeds until the parties agreed to terminate the entireties estate. *Id.,* 204 Va. at 126–27, 129 S.E.2d at 663. Because the proceeds were held as tenants by the entirety, individual creditors of the husband were unable to reach the proceeds, just as they had been unable to reach the real estate before it was sold. Consequently, a joint transfer of the proceeds to a third party or to the wife was not a fraudulent conveyance as to the husband's individual creditors. "This is so for the obvious reason that creditors are not prejudiced by a gift of property which is exempt from their claims." *Id.,* 204 Va. at 127, 129 S.E.2d at 664. The joint transfer

was accomplished by the settlement agent paying all of the proceeds directly to the wife. *Id.,* 204 Va. at 124, 129 S.E.2d at 661.

The transfer in *Oliver* was for all intents and purposes identical to the transfer in *Vasilion v. Vasilion,* 192 Va. 735, 66 S.E.2d 599 (1951). In *Vasilion,* George Vasilion and Anne A. Vasilion, husband and wife, bought a lot in Norfolk in 1946 and owned it as tenants by the entirety with the common-law right of survivorship. In May 1949 while the property was owned by the Vasilions as tenants by the entirety, George borrowed $3,000 from his father, Ernest. The loan was not repaid as agreed and in November 1949 Ernest obtained a judgment against his son which was duly docketed. On August 17, 1949, before Ernest obtained his judgment, George and Anne jointly conveyed the property, without consideration, to Anne. Ernest sought to avoid the transfer as either a fraudulent conveyance or a voluntary conveyance. *Id.,* 192 Va. at 737, 66 S.E.2d at 600.

■■■ The trial court sustained a demurrer to the bill of complaint and the Supreme Court affirmed. The Supreme Court reviewed some of the incidents of a tenancy by the entireties estate. Neither spouse can sever the estate by his or her sole act. Neither spouse may convey or dispose of any part the estate. Upon the death of the first tenant, the whole estate remains in the survivor. The heirs of the first spouse to die inherit no part of the property. The spouses may jointly convey the property to a third party. *Id.,* 192 Va. at 740, 66 S.E.2d at 602. "[T]he entirety is liable for the joint debts of both spouses ... [b]ut is completely immune from the claims of creditors against either husband or wife alone." The Court concluded:

Therefore, if the property can be conveyed by the husband and wife jointly,

free from liens or claims of creditors, to a third party, there is no reason why it cannot be so conveyed by the husband and wife to himself or herself. Code, 1950, § 55–9.

No question of fraud is involved as property so held is insulated against the claims of creditors of the individual spouse.

*Id.*, 192 Va. at 743, 66 S.E.2d at 604.

This principal was applied in *Oliver*. The proceeds from the sale of the entireties property were also held as tenants by the entireties. The tenants by the entireties proceeds were transferred from Mr. and Mrs. Oliver to Mrs. Oliver by the settlement attorney at their joint instruction. While the proceeds became Mrs. Oliver's sole property upon completion of the transfer, there was no moment when Mr. Oliver had a separate interest in them that could be reached by a creditor or the trustee in bankruptcy.

*Pitts* follows *Oliver* and further clarifies its holding. In *Pitts*, George G. Pitts and Ellen O. Pitts sold a parcel of real property which had been conveyed to "George G. Pitts and Ellen O. Pitts, husband and wife, as tenants by the entirety with the right of survivorship as at common law." *Id.*, 242 Va. at 257, 408 S.E.2d at 902. The purchaser executed two promissory notes as consideration for the sale. The notes were each payable "to the order of GEORGE G. PITTS and ELLEN O. PITTS." Three years later, the Internal Revenue Service filed a notice of an income tax lien against George only and sought to attach the payments under the note. The IRS argued that property held by a husband and wife is held as tenants in common unless "it manifestly appears from the tenor of the instrument" that the property is held as tenants by the entirety. *Id.*, 242 Va. at

260, 408 S.E.2d at 904. The IRS concluded that since there was no language on the face of the promissory notes that evinced such a choice, the notes were held as tenants in common. The United States District Court found in favor of the IRS, stating:

> The notes do not state that the Pitts own them as tenants by the entirety. The language of the notes does not include any words indicating survivorship. Neither are the notes 'proceeds', cash, which can be traced back to the tenancy by the entirety without doing a title search of the previous real property. Therefore, these notes *do not automatically* keep the ownership interest of the real property they secure.

*Id.*, 242 Va. at 258, 408 S.E.2d at 903 (emphasis added).

The Supreme Court of Virginia [2] held to the contrary:

> Applying the plain-meaning rule in our interpretation of these statutes [Code of Virginia §§ 55–20 and –21], we find that they were intended to apply to joint tenancies and to tenancies by the entireties created by an "instrument" of conveyance or devise. The promissory notes executed by the partnership are not such instruments. They did not *create* a tenancy by the entirety; they are memorials of a chose in action, the *corpus* of such an estate, one that arose by rule of law. The fact that those notes and the deed of trust securing the debt they represent contain no language evincing a survivorship intent is wholly immaterial to the question before us.

*Id.*, 242 Va. at 260, 408 S.E.2d at 904 (emphasis in original). It then held, because the note was held by the Pitts as

2. The case was before the Supreme Court of Virginia on a question certified from the Unit-

ed States Court of Appeals for the Fourth Circuit to which an appeal had been taken.

tenants by the entirety, that the case was controlled by *Oliver*. The notes were immune from the claims of individual creditors of either George or Ellen.

■ *Oliver* and *Pitts* instruct that proceeds from the voluntary sale of real property held by a husband and wife as tenants by the entirety with the common-law right of survivorship ***automatically*** continue to be held by them as tenants by the entirety with the common-law right of survivorship until there is "an agreement or understanding to the contrary." *Oliver*, 204 Va. at 126–27, 129 S.E.2d at 663; *Sprouse v. Griffin*, 250 Va. 46, 51, 458 S.E.2d 770, 773 (1995), *Pitts*, 242 Va. at 261, 408 S.E.2d at 905; *Phillips v. McCullen (In re McCullen)*, 244 B.R. 73, 77 (Bankr.E.D.Va. 1999)("While a joint sale of real estate held in a tenancy by the entireties terminates the estate in the real property, the proceeds will also be held by the entireties absent an agreement to the contrary.")(Shelley, J.)

■ In this case, the real property was held by the debtor and her estranged husband as tenants by the entirety when it was sold. The proceeds, which the settlement attorney retained and continues to hold, are held—automatically—as tenants by the entirety with the common-law right of survivorship until the parties jointly agree to the contrary.

The trustee argues that there is such an agreement to the contrary. The Nagels were estranged at the time of settlement and both intended to split the proceeds. They simply did not agree on ***how*** to split the proceeds. Terri wanted 60% of the proceeds. Edward wanted it all. Additionally, the settlement attorney established two separate accounts, one in the name of each of the parties. The trustee argues that these circumstances evince an agreement to sever the entireties estate.

*Sprouse v. Griffin* is very similar to this case. In *Sprouse*, Thomas E. Sprouse and Lorraine G. Sprouse owned real property as tenants by the entirety. They separated and Lorraine filed a bill of complaint seeking a divorce. Thomas filed a cross-bill also seeking a divorce. The bill of complaint—as did Terri Nagel's in this case—sought an adjudication of the parties' property rights. While the divorce suit was pending, they sold the real property. They too were unable to agree upon the disposition of the proceeds. The trial court ordered that the proceeds be held in escrow by the attorneys for the parties until further order of the court. The proceeds were paid to the attorneys by a single check payable to them jointly for their clients. Three months later, Thomas died. No divorce decree had been entered before his death. The administrator of Thomas' estate sought one-half of the proceeds. Lorraine sought all the proceeds as the surviving tenant by the entirety. No evidence was presented of an agreement or understanding between the parties that the funds were to be held in any manner other than by the attorneys for the parties as tenants by the entirety. *Id.*, 250 Va. at 48, 458 S.E.2d at 772. The trial court found for Lorraine and the Supreme Court of Virginia affirmed the trial court, stating:

As the trial court noted, there was no evidence of any agreement or understanding between the husband and wife to the effect that the funds in the escrow account were to be held in any manner other than by the attorneys for the parties as tenants by the entireties. Even though the parties consented to [the] sale of the realty, the parties could not agree on the disposition of the proceeds. Thus, the trial court ordered that the funds be placed in escrow. Nothing transpired, however, to indicate any intention of the parties to change the

character of the proceeds from entireties property.

*Id.,* 250 Va. at 51, 458 S.E.2d at 773.

This is substantially the situation presented in this case. The parties in both cases sold their tenants by the entirety real property and placed the proceeds in escrow. In *Sprouse,* the escrow was ordered by the circuit court. In this case the escrow was established by the parties. The significant fact is that the proceeds were placed in escrow, not that the escrow was voluntary or court ordered. In both cases the parties intended to split the proceeds but could not agree how to split them. The Supreme Court found in *Sprouse* that this was not an agreement to terminate the entireties estate. Nor can it be here. There is a difference between the intention to split the proceeds and an agreement or understanding to terminate the entireties estate. The intention to split the proceeds in a manner not yet agreed upon is not itself an agreement to terminate the entireties estate or a termination of it. If the parties had agreed to terminate the entireties estate but had not agreed on how to divide the proceeds between themselves, they would have become tenants in common, each entitled at law to one-half of the proceeds. They each would have had a legally enforceable right to his or her one-half and could have spent his or her portion without further consent of the other. This they clearly did not intend. They were each asserting their equitable distribution rights and seeking more than one-half of the proceeds. Neither was willing to allow the other to have possession of any portion of the proceeds until the matter was resolved. In contract terms, there was no meeting of the minds on all material terms. Until there was agreement on all material terms, there was no agreement. One material term upon which they both agreed—that the entireties estate would be terminated—was part and parcel with the other material term upon which they did not agree—how much each would receive. While it is theoretically possible for parties to agree to sever the entireties estate and resolve the distribution in the future, this was not the case in *Sprouse* or here.

Borinsky's action in opening two accounts does not reflect an agreement to sever the tenancy. While the fund was called an escrow fund, it was in fact a single trust. The Nagels had not agreed on the division of the funds so separate trust funds could not be established. The trustee was required to pay the proceeds in any proportion the Nagels or the circuit court later directed without regard to the amount in either account. Establishing two trust funds, one for each party, is inconsistent with these circumstances, particularly, here where the evidence is uncontested that the two accounts were established for an unrelated reason.

In addition to expressly agreeing to sever an entireties estate, the tenants can in fact sever it by their joint conduct. The conduct, however, must be inconsistent with the continuation of the entireties estate. For example, in *McCullen,* the McCullens sold their entireties property and each received a check for one-half of the net proceeds of sale. Both testified that they understood that each could do what he or she wanted with his or her half. Both paid some of his or her individual debts. *Id.,* 244 B.R. at 75. While the bankruptcy court stated that these actions were "indicia of the McCullens' intent to sever the entireties tenancy" the same result should be reached even if the parties did not consciously intend to sever the estate. Their very actions, which were consensual, severed the estate. Consequently, even if tenants by the entireties do not have a conscious intention or an

explicit agreement to sever the entireties estate, the estate will be terminated if their actions are inconsistent with the continuation of the entireties estate and destroy at least one of the five unities necessary for the existence of the entireties estate. The entireties estates were terminated in *Oliver, McCullen* and *Vasilion.* In *Oliver,* Mrs. Oliver did not retain a tenancy by the entireties estate in the funds that she held. Those funds were hers and hers alone. The estate was severed upon the payment of the entireties proceeds solely to her just as in *McCullen* the entireties estate was severed upon the division of the proceeds between Mr. and Mrs. McCullen. Similarly, in *Vasilion* Mrs. Vasilion solely owned the real estate conveyed to her individually.

The trustee argues that splitting the proceeds into two accounts is the same as splitting of proceeds in *McCullen* and itself severed the estate. The critical inquiry, however, is not how the trustee, Mr. Borinsky, invested or held the trust fund, but how the beneficiaries—Mr. and Mrs. Nagel—held their interest in the trust fund. Mr. Borinsky is the trustee and the Nagels are the beneficiaries. As beneficiaries, the Nagels do not have an interest in the accounts themselves. The trustee holds

legal title to them and controls them. It is their equitable interest that remains in the tenancy by the entirety. The trustee may invest or hold the trust *res* in any manner appropriate under the trustee agreement without affecting the manner in which the beneficiaries hold their beneficial interest.[3] He recommended, and the Nagels agreed, that he would invest the *res* of the single trust fund in two separate accounts, each with the social security number of one of the parties.[4] This has no effect on the trust itself or their beneficial interest or the manner in which their beneficial interest is held. It is not an agreement to sever the estate. Nor does it destroy any of the unities required to maintain the entireties estate. Those unities attach to the beneficial interest, not the *res*.[5]

### Conclusion

Virginia law establishes that the proceeds from the sale of the Nagel's tenants by the entireties real estate were automatically held by them as tenants by the entireties. The record on the trustee's motion for summary judgment reflects that the Nagels did not agree to sever the estate and that their conduct—the manner in which the proceeds were held—was not inconsistent with holding the proceeds as

---

3. In *Sprouse,* no mention is made of what the two attorneys did with the joint check. How they held the escrow fund was irrelevant.

4. The trust is a grantor trust and the income will be taxable to the grantors. The devise used assured that half of the interest would be reported to each party. IRS regulations permit a party who receives a Form 1099 and who is in fact a nominee for other parties to report the receipt as a nominee distribution and not pay tax on it. Thus, the Form 1099 that the bank issues may not be determinative.

5. The equitable distribution rights asserted in the divorce proceeding are immaterial. The object of equitable distribution is to determine how the marital assets ought to be divided

between the spouses. The assertion of equitable distribution rights and the positions taken to obtain what each spouse believes is equitable do not terminate the entireties estate. None of the five unities are destroyed by the litigation itself. In fact, the circuit court has no jurisdiction to dispose or transfer any marital property that was property of the bankruptcy estate. The debtor's one-half interest in the escrow account remains property of the estate until it is abandoned, administered or the claim of exemption is allowed. The divorce proceedings may have consequences for the bankruptcy estate for different reasons. *See* 11 U.S.C. § 541(a)(5)(B); *In re Cordova,* 73 F.3d 38 (4th Cir.1996).

tenants by the entireties and did not destroy any of the five required unities. The trustee's motion for summary judgment on its objection to the debtor's claim of exemption will be overruled.